Miriam E. GELLER, on behalf of herself and all others similarly situated

v.

Walter MARKHAM et al.

Civ. No. H-77-363.

United States District Court,
D. Connecticut.

Dec. 18, 1979.

**836**

Elizabeth K. Spahn, New England School of Law, Boston, Mass., Gary J. Mena, Greater Boston Legal Services, Dorchester, Mass., for plaintiffs.

Russell Lee Post, Jr., Avon Park North, Conn., O. Bradford Griffin, Jr., Litchfield, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR NEW TRIAL

BLUMENFELD, District Judge.

This is a case brought by Miriam Geller under the class-action provisions of the ADEA.[1] After a full trial, a unanimous jury found that Mrs. Geller was entitled to $15,190 in back pay from the defendant school for its refusal to hire her on the basis of her age. Defendants have previously moved unsuccessfully for a directed verdict and a judgment notwithstanding the verdict. They now seek a new trial on the grounds of inadequate jury instructions. In particular they complain that this court should not have ruled that their use of an "experience" factor, i. e., the "sixth-step guideline," was a per se violation of the ADEA, and that the jury should not have been given the "one-of-the-reasons" standard for determining the causation nexus.

Where the interests of justice require, the District Court is empowered to grant a new trial, Fed.R.Civ.P. 59; *Moore's Federal Practice* ¶ 59.08[1] (2d ed.) at 59–102, and a prejudicial error in the instructions given to the jury is properly grounds for granting a Rule 59 motion. *Moore's Federal Practice* ¶ 59.08[2] (2d ed.) at 59–105; *Ambrose v. Wheatley*, 321 F.Supp. 1220 (D.Del.1971). Consequently, a careful analysis of the defendants' objections is necessary in spite of the fact that they have already been considered and rejected in earlier rulings.

### *ADEA Violation as a Matter of Law*

This case centered on the defendants' use of the so-called "sixth-step" policy which reads as follows:

1. 29 U.S.C. § 621 *et seq.*

"Except in special circumstances and to the extent possible, teachers needed in West Hartford next year will be recruited at levels below the sixth step on the salary schedule."

Uncontroverted evidence established that the application of this policy to the general pool of job applicants had a disproportionate impact on those applicants between the ADEA protected ages of 40–65. (In fact, 92.6% of all the applicants who were disadvantaged by the West Hartford School District's use of this policy were over 40 and under 65.) Consequently, this court instructed the jury as follows:

"[This court has decided] as a matter of law that this ['sixth-step'] guideline has an adverse impact on job applicants over 40 years of age as compared with applicants under that age. . . . So I say that if implemented that would be a violation of the Age Discrimination Act. Now the issue for you to decide with regard to Mrs. Geller, therefore, is what role this guideline played in the defendants' decision not to offer Mrs. Geller a permanent teaching position at the Bugbee Elementary School."

Defendants argue that this was error since the jury should have been instructed that the plaintiff had to prove that the facially neutral restriction was enacted with an intent to discriminate against the aged before the jury could find its use to be a violation of the ADEA. Defendants' argument, however, is based on at least two lines of authority, neither of which are applicable to the facts of this case. A closer analysis substantiates this court's view that the instruction given was not in error.

■ The first distinction that needs to be drawn is between those employment discrimination cases involving disparate treat-

ment and those involving disparate impact.[2] The standards connected with the former arise out of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) while the latter stem from the case of *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Both standards are applicable to Title VII cases and are valuable guides to ADEA suits as well. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir. 1979); *Hodgson v. First Federal Savings & Loan Ass'n,* 455 F.2d 818, 820 (5th Cir. 1972); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 784 (D.Md.1978); *Schulz v. Hickok Manufacturing Co., Inc.,* 358 F.Supp. 1208, 1212 n.2 (N.D.Ga.1973); *cf. Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Reich v. Dow Badische Co.,* 575 F.2d 363, 367 (2d Cir. 1978), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683; *Nabors v. United States,* 568 F.2d 657, 659 n.3 (9th Cir. 1978).

In *McDonnell Douglas,* an individual black plaintiff filed a complaint alleging that McDonnell Douglas had discriminated against him when it refused to rehire him following a general layoff. McDonnell Douglas responded claiming that its refusal to hire the plaintiff was predicated on his involvement in an illegal plan to block traffic in a protest over McDonnell Douglas policies. The issue before the Court was the proper order and burden of proof in such cases. After noting the disagreement between the circuits, it held that once the plaintiff made out a prima facie case of discrimination[3] the employer had to come forward and "articulate" a legitimate non-race related justification for its action. After it had done so, the plaintiff was to be offered an opportunity to prove that the employer's justification was a mere "pretext" for racial discrimination.

---

**2.** *See generally* B. Schlei and P. Grossman, Employment Discrimination Law (1976 and Supp. 1979).

**3.** Although the Court referred to this initial showing as establishing a "prima facie" case, it, standing alone, is insufficient to get the case to a jury. In *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295,

58 L.Ed.2d 216 (1978), the Court made it clear that the plaintiff had the burden of persuasion throughout and that the burden on the defendant is only to articulate some justifiable reason for his action. Unless the plaintiff presents evidence tending to show that the employer's reason is a "pretext" for discrimination, the defendant will be entitled to a directed verdict.

838

Although the Court did not say so in so many words, the last determination essentially involves a question of motive. If, in an individual case, the plaintiff cannot demonstrate an improper motive there is no way for the jury to find that he was discriminated against. In other words, the employee fails to establish his claim because he has not proved that a racially biased reason actually accounted for the company's failure to hire him.

While the *McDonnell Douglas* standards have been extended to age discrimination suits, *e. g., Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir. 1979); *Wilson v. Sealtest Foods Div. of Kraftco Corp.,* 501 F.2d 84, 86 (5th Cir. 1974), they are "surely not the only . . . way of establishing a legally sufficient prima facie case . . ." *Loeb v. Textron, supra* at 1017 (footnote omitted). In the analogous area of Title VII, the Supreme Court has been careful to insure that *McDonnell Douglas* standards are not treated as the exclusive method of establishing Title VII violations.

"The company and union seize upon the *McDonnell Douglas* pattern as the *only* means of establishing a prima facie case of individual discrimination. Our decision in that case, however, did not purport to create an inflexible formulation. We expressly noted that '[t]he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations.' *Id.,* 411 U.S. at 802 n.13, 93 S.Ct. 1817. The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act."

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (footnote omitted) (emphasis in original). In particu-

lar, as an alternative to the *McDonnell Douglas* approach, a long line of authority has allowed plaintiffs to establish a prima facie case of discrimination by demonstrating the disparate impact on a minority group of a general policy, procedure or test utilized in hiring, promotions or discharges. Beginning with *McDonnell Douglas* itself, the Court has always distinguished class action challenges to general company policies from challenges to the individual discriminatory act of the type alleged in *McDonnell Douglas.* 411 U.S. at 802 n.14, 93 S.Ct. 1817. The disparate impact test has been utilized in numerous subsequent cases, each involving a challenge to a general policy or procedure. *E. g., Teamsters, supra; Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1976); *cf. Loeb v. Textron, Inc.,* 600 F.2d 1003, 1017 (1st Cir. 1979) ("Supreme Court has held that a prima facie showing of discrimination can be made in a class action by showing discriminatory hiring patterns and practices.").

"The *Franks* case thus illustrates another means by which a Title VII plaintiff's initial burden of proof can be met. The class there alleged a broad-based policy of employment discrimination; upon proof of that allegation there were reasonable grounds to infer that individual hiring decisions were made in pursuit of the discriminatory policy and to require the employer to come forth with evidence dispelling that inference."

*Teamsters, supra,* 431 U.S. at 359, 97 S.Ct. at 1867 (footnote omitted).

In disparate impact, as opposed to disparate treatment, Title VII cases, proof of motive is not required. "Under the Act, practices, procedures or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *General Electric Co. v. Gilbert,* 429 U.S. 125, 137, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). *See also Washington v. Davis,* 426 U.S. 229, 246–48,

96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The reason for the distinction is obvious. In individualized cases, absent proof of a wrong motive, there is no basis for determining whether the race, or in this case age, of the aggrieved employee affected the employer's decision. Thus there can be no showing of discrimination. In broader challenges to company policies, however, discrimination can be shown from statistics alone. Thus under *McDonnell Douglas* the burden of proof remains on the plaintiff throughout because no prima facie case of discrimination is made out until after the plaintiff establishes motive. In the *Griggs* line of authority, a showing of disparate impact shifts the burden to the defendants to establish the "job-relatedness" of their tests or the "business necessity" behind their policies. This is consistent with the explanation that the plaintiff has made out his prima facie case under *Griggs* as soon as disparate impact is shown.

In this case, plaintiff clearly advances a broad attack on a general policy of the school board. She does not challenge the motive of those who made the individualized decision to hire her. Rather she has claimed that she, and all others similarly situated, have been discriminated against by the application of the general school board policy. Thus, Mrs. Geller falls squarely within the *Griggs* line of authority, and the *McDonnell Douglas* notions of motive are inapplicable.

■ Defendants, as a second independent basis for their "motive" requirement, rely on the cases of *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Personnel Administrator of Mas-*

*sachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Neither of these cases support defendants' position here, however, since they were both expressly decided on constitutional grounds. In *Washington v. Davis,* when the Court announced that disparate impact alone is insufficient to establish a prima facie case of a violation of the Equal Protection Clause, it carefully distinguished this rule from the rule which is applicable in statutory Title VII claims. 426 U.S. at 246–48, 96 S.Ct. 2040. There is no reason to suppose that Congress would want the ADEA and Title VII treated differently in this respect. In fact, if anything, the evidence is to the contrary. *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) ("In fact, the [substantive] prohibitions of the ADEA were derived *in haec verba* from Title VII"). Therefore, in spite of the fact that motive is a relevant factor in equal protection claims and in Title VII disparate treatment claims, it is inapplicable to Title VII disparate impact claims such as the one advanced by Mrs. Geller in this suit. Because the plaintiff did not need to demonstrate an intent to discriminate, the court was correct in charging the jury that the application of the sixth-step policy constituted a violation of the ADEA.[4] Consequently, defendants' motion for a new trial on this ground is denied.

### Standard of Causation

Defendants also advance a second ground in support of their motion for a new trial. They complain of the standard of causation enunciated by the court.[5] In submitting

---

**4.** Title VII actions are generally considered equitable in nature and are, therefore, tried to a judge. *Slack v. Havens,* 522 F.2d 1091 (9th Cir. 1975); *Travers v. Corning Glass Works,* 76 F.R.D. 431, 434 (S.D.N.Y.1977) (Weinfeld, J.). Consequently, case law developed under Title VII is of no assistance in determining whether or not a finding of disparate impact amounts to a finding of discrimination as a matter of law or whether it is an issue for the trier of fact. It need not be decided here, however, where there is no real disagreement over the extent of the impact on those between the ages of 40 and 65 and where the magnitude of the impact is so

substantial. For even if it is a question of fact, the court is justified in removing a factual question from the jury and deciding it as a matter of law where no reasonable jury applying the proper law could possibly disagree. *Baker v. Texas and Pacific Railway Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); *Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876, 885 (2d Cir. 1972). Such is the case here.

**5.** No clear consensus on the exact wording of the causation standard has yet emerged. As with all new statutes, the courts have been

the case to the jury, the court propounded several questions which the jury was to answer. As to each of the defendants the jury was asked if the sixth-step guideline was "one reason for [the defendant's] decision not to recommend Mrs. Geller for the permanent art teacher's position at the Bugbee School." On each question, the jury found by unanimous vote that the defendants had, indeed, considered such a guideline as at least "one reason" for their refusal to hire the plaintiff.

Defendants now argue, as they did before, that an instruction which allows the jury to premise liability on a finding that age was "a reason" rather than a "determinative factor" is contrary to the law, and they seek to buttress their motion by the First Circuit's decision in *Loeb v. Textron, Inc.,* 600 F.2d 1003. In that case, the court held that an instruction to the jury that plaintiff's age had to have "made a difference in determining if he was demoted, or retained or discharged" was inadequate. Instead, the First Circuit ruled that a "but-for" demonstration by the aggrieved employee would be required. Only if age was a "but-for" cause of the discharge, *i. e.* a "determining" factor, should damages be awarded to the plaintiff.

Frankly, however, this court fails to understand the fine lines which the First Circuit is drawing in this area. An illustration can help illuminate this court's belief that the two instructions distinguished in *Loeb* amount to different words for describing the same essence.

Suppose that a hypothetical plaintiff, in addition to being over 50 years old, had only had two years of college education and had a criminal record for child molestation. The defendant employers are called to the stand and they attest to the following facts: first, they admit that they have a firm policy against hiring anyone over 50, and secondly, they point out that even if the plaintiff were under 50 they would never hire a child molester. In this hypothetical, age was clearly a factor which was considered, but it cannot be said to be a factor which "made a difference." The same sentiment can be expressed in other words. Age was not the "but-for" cause of the defendants' refusal to hire the plaintiff and therefore was not a "determinative factor."

Now, altering the hypothetical slightly, suppose that the plaintiff is over 50 years old with only two years of college education and no criminal record. Our same hypothetical defendants take the witness stand and testify as follows: "Had the plaintiff been under 50 with two years of college education she would have been hired. If she were over 50 with four years of college education she also would have been hired." The jury again retires to deliberate and this time, quite correctly, concludes that not only was age a factor that was considered, but that the plaintiff's age "made a difference." Again the same conclusion would be expressed by pointing to age as a "but-for" or "determining" factor. This court is unable to perceive the separate strands which the First Circuit seeks to treat differently. As to any situation where age is a factor which "makes a difference" it would also seem to be a "but-for" factor as well. Consequently, this court fails to see any difference between the rule announced in *Loeb* and the older, more traditional test of a factor "which made a difference," *Laugesen v. Anaconda Company,* 510 F.2d 307 (6th Cir. 1975), relied on in this case.

exploring alternative formulations which express the essence of the statute in words clearly understandable to the layperson. Consider: *Reed v. Shell Oil Co.,* 14 FEP 875, 877 (S.D. Ohio 1977) (whether "age constituted any factor in the discharge"); *Usery v. General Electric Co.,* 13 FEP 1641, 1646 (M.D.Tenn.1976) (plaintiff must show "age was one factor which in fact made a difference in determining whether [plaintiff] would be discharged or retained"); *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958

(8th Cir. 1978) (must "show that age was a determining factor"); *Magruder v. Selling Areas Marketing,* 439 F.Supp. 1155 (N.D.Ill.1977) (same); *Mastie v. Great Lakes Steel Corp.,* 424 F.Supp. 1299 (E.D.Mich.1976) (age must be a "determining" factor rather than "a" factor); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir. 1979) (age must be a "determining" factor); *Coates v. National Cash Register,* 433 F.Supp. 655, 660 (W.D.Va.1977) ("one of the reasons for their discharge was their age").

This inability to see distinctions does not extend so far, however, that the court is unable to see the difference between "a factor" and "a factor which makes a difference." In the first hypothetical discussed above, age was clearly a factor considered in spite of the fact that it was not a factor which made a difference. If relief were to be afforded every time age was considered, the effects would go well beyond the remedial designs of the drafters of the ADEA. Back pay would be awarded to those who never had a chance for the job at any age. While doing so would provide a strong deterrent against age discrimination, it would be a deterrent far in excess of the limited deterrent Congress intended to provide when it enacted the ADEA. *Cf. Dean v. American Sec. Ins. Co.,* 559 F.2d 1036 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

Thus the court is left with the question of whether its instructions to the members of the jury merely required that they find age to be "a factor" or whether the jury was also obligated to find that it was "a factor which made a difference." On close analysis, I find that the instructions actually given closely resembled the latter standard. While perhaps inartfully drafted, they certainly conveyed the necessary standard to the jury since in order for the jury to have found age to have been a "reason" for the defendants' decision it must also have found it to be a "factor which made a difference." At least one other court has characterized the "one of the reasons" language as expressing the same standard as the "factor making a difference" language. *Coates v. National Cash Register,* 433 F.Supp. 655, 660, 661 (W.D.Va.1977). This is particularly true in this case where the special interrogatories were sent to the jury in the context of an oral instruction which included, in part, the following language:

> "There could have been more than one reason for defendants' decision about [Mrs. Geller's] employment but she is nevertheless entitled to recover if one factor was her [age] *and if it made a*

*difference in determining whether she would be employed.* If it did not make any difference, if it was not a reason that entered into the decision, then of course she has not proved her case. But if it did, then she has.

> "If defendants' decision about Mrs. Geller was made in whole or in part because she was above the fifth step on the salary scale, . . . Mrs. Geller is entitled to recover . . . ." (Emphasis added.)

When the jury instruction and interrogatories are viewed in their totality, it is clear that no error of law has been made. Defendants' motion for a new trial is denied.

SO ORDERED.