Bernard FRANK, John Pareti and Martin Kessler, on behalf of themselves and other employees similarly situated, Plaintiffs,

v.

CAPITAL CITIES COMMUNICATIONS, INC., Capital Cities Media, Inc. and Fairchild Publications, Inc., Defendants.

No. 80 Civ. 2188–CSH.

United States District Court, S. D. New York.

Jan. 6, 1981.

Beldock, Levine & Hoffman, New York City, for plaintiffs; Cynthia Rollings, New York City, of counsel.

Hall, Dickler, Lawler, Kent & Howley, New York City, for defendants; Milford Fenster, Paul Sarno, Robin L. Hirsch, New York City, of counsel.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action commenced pursuant to the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621 *et seq.* Plaintiff Bernard Frank is an employee of Fairchild News Service, a subdivision of defendant Fairchild publications ("FP").[1] Plaintiffs John Pareti and Martin Kessler are employees of the Daily News Record, another subdivision of FP. FP is a division of defendant Capital Cities Media, Inc. ("Media"), which is in turn a wholly-owned subsidiary of defendant Capital Cities Communications, Inc. ("Communications"). Plaintiffs sue on behalf of themselves "and other employees similarly situated." The complaint charges all defendants with violations of the ADEA, in that they discriminate against older employees in respect of the compensation, terms, conditions and privileges of their employment.

Plaintiffs move for Court authorization to send a notice to other potential plaintiffs to inform them of their opportunity to "opt-in" to the present suit. The basis for giving such a notice derives from the ADEA, 29 U.S.C. § 626(b), which provides that the statute will be enforced in accordance, *inter alia*, with the powers, remedies and procedures provided in 29 U.S.C. § 216(b). Section 216(b), which forms a part of the Fair Labor Standards Act ("FLSA"), renders an employer who violates the statute liable to its employees. Section 216(b) provides in pertinent part:

"Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

The Second Circuit, construing § 216(b) in the context of an FLSA suit for nonpayment of statutorily required minimum wages and overtime compensation, declared the district courts' authority to authorize the giving of notice "in an appropriate case," a holding which "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Laboratories,* 600 F.2d 335, 336 (2d Cir. 1979), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979).

■ Plaintiffs contend that notices should be sent to all present employees of the three defendants between the ages of forty and seventy, and to all former employees of the three defendants since 1960 who were between the ages of forty and seventy at the time of termination of their employment. Plaintiffs further demand that defendants be directed to furnish them with the names and addresses of such individuals.

Additionally, plaintiffs ask that defendants be directed to publish the notice in the "CAP CITIES INK," a company newspaper distributed to defendants' employees, and to permit the posting of the notice on company bulletin boards.

Defendants resist the sending of any notice. They point out, correctly, that *Braunstein, supra,* involved an FLSA claim, whereas the instant case arises out of the ADEA; and argue "that a complaint brought under the ADEA is rarely, if ever, an appropriate case for the sending of a notice" under § 216(b). Brief at p. 7. Alternatively, defendants contend that a notice is premature, or rendered unnecessary by prior newspaper publicity, or, in any event, should not receive as wide dissemination as plaintiffs request, and should not appear in the company newspaper or on the bulletin boards.

The suggestion in defendants' brief that notices to potential plaintiffs are never "appropriate" in ADEA cases is foreclosed by the action of Congress, as construed by the Second Circuit's holding in *Braunstein, supra.* Congress saw fit to make the FLSA § 216(b) "opt-in" provisions applicable to

---

1. While the complaint refers to this defendant as "Fairchild Publications, *Inc.,*" there has been no separate corporation by the name since May, 1976. Affidavit of Robert W. Gelles at ¶ 2.

the ADEA. Both statutes are remedial; the argument that claims of age discrimination are so different in nature from claims for statutory minimum wages that "opt-in" provisions should not apply must be addressed to the Congress, and not to the courts. At least one court, following *Braunstein*, has authorized the giving of notice to potential plaintiffs in an ADEA case. *Geller v. Markham*, 481 F.Supp. 835 (D.Conn.1979). At oral argument, counsel for defendants properly conceded this Court's discretionary power to authorize a notice; the questions that arise are whether, and in what manner, that discretion should be exercised.

I entertain no doubt that some sort of notice is appropriate at this time. While § 216(b) requires that the "other employees" be "similarly situated" to plaintiffs, it does not follow that claims based upon age discrimination are so individual in nature that they cannot lend themselves to class treatment. Cf. *Carter v. Newsday, Inc.*, 13 EPD 6143 (E.D.N.Y. 1976) (suit alleging sex discrimination against women "in recruiting, hiring, training, compensation, use of job titles, job assignments, promotions, fringe benefits, travel assignments, job classifications and story assignments" brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* properly certifiable as class action under Rule 23, F.R.Civ.P.). There is no basis for suggesting that the giving of notice at the present time would be premature. Defendants' argument on that point is that "the plaintiffs' claims may be shown in the crucible of discovery to be weak, if not meritless," in which event no notice should be sent. Brief at p. 21. The answer is that the experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of the plaintiffs' own claims; and the notice machinery contemplated by the ADEA, by reaching out to potential plaintiffs, may further the statute's remedial purpose.

Defendants have faintly suggested that an article appearing in the April 13, 1979 *Wall Street Journal*, describing an action commenced by plaintiffs Pareti and Frank against defendants for alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, gives adequate notice of the present action, so that no further notice is required. The argument is frivolous. The ERISA action, presently pending before Judge Stewart of this Court (79 Civ. 1858–CES) bears no meaningful relation to the case at bar.

Defendant seek to characterize the sending of a notice to potential plaintiffs, identifying the present plaintiffs' counsel as attorneys to be consulted about "opting in," as unethical solicitation of clients. Defendants rely upon *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 883 (1978) and *In re Koffler*, 70 A.D.2d 252, 420 N.Y.S.2d 560 (2d Dept. 1979). The egregious conduct of the attorneys involved in those cases has nothing to do with the giving of notice to potential plaintiffs in furtherance of the objectives of the ADEA. No reason appears why the notice should not identify present plaintiffs' counsel. Judge Blumenfeld approved such a notice in *Geller v. Markham, supra*. As did the notice in that case, the proposed notice in the case at bar advises potential plaintiffs that they may also have attorneys of their own choosing make the requisite notification.

I conclude, therefore, that a notice will be authorized at this time. The scope of its dissemination raises questions of substance. To consider them properly, a description of the defendants' corporate structures and activities is required.

Defendant Communications is engaged primarily in the broadcasting and newspaper business. It owns and operates radio stations and television stations in a number of metropolitan areas throughout the country. It produces television programs through one of its divisions. It also owns and publishes newspapers in a number of cities.[2]

**2.** Affidavit of John E. Shuff, Jr. at ¶¶ 4–5.

Some of Communications' newspapers are published by that corporation's subsidiaries. One of those subsidiaries is defendant Media. Media is a wholly-owned subsidiary of Communications, consisting in turn of five divisions. Three of the Media divisions publish newspapers, one in Belleville, Illinois, another in Arlington, Texas, and a third in Wilkes-Barre, Pennsylvania. A fourth Media division is called "Capital Cities Vision, Inc."; its activities are not revealed by the motion papers. The fifth Media division is defendant FP. Prior to 1976, an entity known as "Fairchild Productions, Inc." had been a wholly-owned subsidiary of Communications; in May of that year the entity lost its corporate status, and became one of the five divisions of Media.[3]

FP gathers and publishes business news and ideas for industries. It is responsible for some 22 separate publications, of which Women's Wear Daily is perhaps the best known; other illustrative titles are Men's Wear, Footwear News, Metalworking News, Internal Medicine News, and Sport-Style. FP's activities include Fairchild News Service, which employs plaintiff Frank, and the Daily News Record, which employs plaintiffs Pareti and Kessler. FP is made up of six major subdivisions, among whom the several publications are divided. Each subdivision is managed by one person, typically a senior vice president.[4]

FP employs about 894 full-time employees, 688 in New York City and 206 outside of New York City. FP's company headquarters is located at 7 East 12th Street, New York City.[5] Communications, in its divisions, subsidiaries, and subdivisions of divisions, employs about 5,000 people. Its headquarters are at 485 Madison Avenue, New York City, where about 25 people are employed.[6]

FP is the only Media division which maintains an office in New York City. FP is managed by Daniel Newman, its president.[7]

The nature of the employer-employee relationship lies at the heart of the dissemination issue. Both the FLSA, the source of the § 216(b) procedures, and the ADEA speak generically in terms of "employers" and "employees." The statutes do not specifically address that relatively common modern phenomenon, the large corporation with subsidiaries, divisions and subdivisions. But the criteria must be practical and pragmatic. The statutes prohibit "employers" from following certain practices. The question thus focuses upon the level in the intracorporate structure at which employment policies are formulated. In the case at bar, the plaintiffs complain that they have been the victims of age discrimination in respect of their compensation and promotion. Accepting those claims *arguendo*, plaintiffs are the victims of whatever "employers" formulated and implemented those discriminatory policies. Other employees of those "employers" may be "similarly situated," under § 216(b).

The contentions of the parties are predictable. Plaintiffs allege in their complaint that Communications and Media have been involved in all aspects of personnel and salary decisions affecting FP employees; and that Communications and Media have implemented, participated in, ratified and approved FP's age discriminatory policies and practices. Complaint, ¶¶ 12–14, 20, 21. In consequence, plaintiffs say, notices of the pendency of this suit and the concomitant ability to "opt in" should be sent to all employees, past and present (back to 1960) of Communications, Media, and FP. Defendants, by way of contrast, contend that the responsibility for determining raises and promotions of FP employees falls upon the senior vice president of each FP subdivision. Thus defendants would limit the notice to employees of the particular FP subdivisions in which plaintiffs were employed.

---

3. See n.1 *supra*; Shuff affidavit at ¶ 6.

4. Affidavit of John B. Fairchild at ¶ 2.

5. *Ibid.*

6. Shuff affidavit at ¶¶ 7, 8.

7. Gelles affidavit at ¶ 4.

■ I hold that plaintiffs, whose burden it is to demonstrate that the giving of notice is "appropriate" in the circumstances, also bear the burden of persuasion on the question of which entity employs them. Of course, plaintiffs may summon to their assistance the various pre-trial discovery procedures. In the case at bar, plaintiffs point to certain evidence adduced during discovery as sustaining the conclusory allegations in the complaint. I hold, however, that on the present record plaintiffs have failed to demonstrate a sufficient basis for sending notices to employees of Communications or Media.

Nothing in plaintiffs' motion papers specifically contradicts the affidavits of responsible officers of the defendants, which disassociate Communications and Media from the decision-making process in respect of the compensation or promotion of FP employees. I am asked to draw a contrary inference from certain aspects of pre-trial discovery. But the several straws in the wind which plaintiffs grasp are insufficient to fashion the requisite brick of policy formulation and implementation. These straws include the temporary assignment, on two occasions, of FP employees to assist when Communications facilities were undergoing labor strikes; the availability to FP employees of a Communications stock option plan; and the distribution to FP employees of the "CAP CITIES INK," a corporation-wide newspaper. These factors, considered separately or together, do not rise to the level of establishing that the allegedly discriminatory practices of which plaintiffs complain were formulated and implemented at the level of either Communications or Media. The temporary borrowing by a corporate parent of its subsidiary's employees to adjust to a labor strike does not require such an inference. Of the several entities involved, only the stock of Communications is publicly held; therefore, if the FP employees were to have the benefit of a stock option plan at all, it had to be Communications stock. The corporate newspaper is a typical, morale-boosting, pep-raising, gossipy publication, shedding no light upon the formulation of policy in the corridors of power. I am not justified, on the basis of such indicia as these, in disregarding the sworn statement of Robert W. Gelles, assistant secretary of Media, that each of Media's five major divisions (of which FP is one) "is managed by a different executive officer, with a separate payroll, personnel department, budget and distinct salary review, vacation, holiday, severance, hiring, firing and fringe benefit policies (with two exceptions) and separate policies for raises and promotions." Affidavit at ¶ 4.

■ While I have rejected defendants' contention that the giving of *any* notice would constitute impermissible solicitation of clients, a legitimate concern arises when it appears that notices may be sent to the employees of entities which do not stand in the relationship of employer to the purported representative plaintiffs. That concern furnishes an additional policy reason for placing the burden of persuasion on the question upon plaintiffs. Because I conclude that the burden has not been sustained on the present record, giving of notice will be limited to FP employees. I decline to limit the dissemination of notice to the particular subdivisions of FP in which the plaintiffs worked. The direction of FP's affairs by a single corporate officer, its president, is sufficient to justify the giving of notice to employees of all FP subdivisions.

A further limitation upon the size of the class to which notice may be sent arises from considerations of time. Plaintiffs wish to go back to 1960. That is contrary to authority, including *Geller v. Markham, supra,* upon which plaintiffs rely. In *Pandis v. Sikorsky Aircraft Division of United Technologies Corp.,* 431 F.Supp. 793, 798 (D.Conn.1977), District Judge Newman (as he then was) construed the ADEA to hold that "[c]laims that were time-barred on the date that plaintiff filed his suit cannot be revived by the commencement of a putative class action." 431 F.Supp. at 798. Judge Blumenfeld accepted that analysis in limiting the size of the class to be notified in *Geller v. Markham, supra,* 481 F.Supp. at

836. While the particular time-bar provisions in 29 U.S.C. § 626 referred to in *Pandis* and *Geller* were amended in 1978, Pub.L. 95–256, § 4, April 6, 1978, 92 Stat. 190, 191, the persuasive rationale of those cases is not affected.

Section 626(d) now reads, in pertinent part:

"No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

"(1) within 180 days after the alleged unlawful practice occurred; . . ."

The present plaintiffs filed charges of age discrimination with the Equal Employment Opportunity Commission [8] on September 27, 1979. Complaint, ¶ 4. Under the provisions of 29 U.S.C. § 626(d)(1), plaintiffs were not entitled to complain of an alleged unlawful practice occurring more than 180 days prior to September 27, 1979. March 31, 1979 is 180 days prior to September 27, 1979. This is the date available to all members of the potential class. *Geller v. Markham, supra,* at 836 n.2. It follows that the statutory claims of individuals whose employment by FP was terminated prior to March 31, 1979 are time-barred. They will not receive notices.

As to the means of publishing the notice, in view of the inadequacy of plaintiffs' showing discussed *supra,* defendants are not required to publish the notice in the "CAP CITIES INK." Defendant FP will be required, once a revised form of notice has been agreed upon or adjudicated, to permit the posting of copies of public bulletin boards at FP offices. Defendant FP is further directed, within thirty (30) days of the date of this opinion, to furnish plaintiffs' counsel with the names and last known addresses of individuals who (a) are presently employed by FP; or (b) were in the past so employed, and whose employment by FP was terminated on or after March 31, 1979.

Plaintiffs are directed to settle a revised form of notice, in conformity with this opinion, on three (3) days' notice.

The resolution of this motion is without prejudice to plaintiffs' right to renew their application to send notices to employees of Communications or Media, should sufficient foundation appear at a subsequent time.

It is So ordered.

---

**8.** Functions vested by ADEA in the Secretary of Labor were transferred to the Commission by § 2 of 1978 Reorg. Plan No. 1, 43 FR. 19807, 92 Stat. 3781.