**Tracy T. YUEN, Plaintiff,**

v.

**U.S. ASIA COMMERCIAL DEVELOPMENT CORP., et al., Defendants.**

**Civil Action No. 96–1371–A.**

United States District Court, E.D. Virginia, Alexandria Division.

July 29, 1997.

John J. Rigby, McInroy & Rigby, LLP, Arlington, VA, for Plaintiff.

Thomas C. Green, Michael D. Warden, Sidley & Austin, Washington, DC, for Defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

In this Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), action, plaintiff seeks premium pay for overtime work. She claims she is an hourly employee because most of her duties involve production or menial work and because she is not a "salary basis" employee under FLSA given that her employer deducted from her business expenses reimbursement several $10 charges for times that she used the employer's telephone for personal long distance calls without using a telephone calling card. The employer disputes this, claiming instead that plaintiff is exempt from FLSA's overtime provisions because the $10 charge does not alter her status as a "salary basis" employee and because her work is predominantly professional, administrative, or executive in nature.

The parties have filed cross-motions for summary judgment and partial summary judgment. These motions were fully argued and the matter is now ripe for disposition. For the reasons that follow, the employer is

entitled to summary judgment on the salary status issue, but the degree to which plaintiff's work is administrative, professional or executive in nature involves disputed issues of fact and must therefore be tried.

## I.

Plaintiff Tracy T. Yuen was employed by defendant U.S. Asia Commercial Development Corp. ("U.S. Asia") from November 1994 through June 1996. Defendant Therese Shaheen is the President and co-owner of U.S. Asia. U.S. Asia is a private consulting company engaged primarily in the development of strategic relationships and markets in Northeast Asia on behalf of corporate clients in the United States.

Yuen, a graduate of the University of Chicago with a Master's Degree in International Affairs from George Washington University, was hired by U.S. Asia for the position of Project officer after completing her master's studies. While the nature and extent of her duties are disputed, the undisputed record reflects that, in part, Yuen's responsibilities at U.S. Asia included managing the United States operations of a Chinese telecommunications project, client consulting, business development on behalf of clients and on behalf of U.S. Asia, liaison responsibilities between clients, U.S. Asia and government officials, and language translation. Yuen contends that these duties represent only a portion of the work she was required to perform at U.S. Asia, and that she was also required to perform closely supervised clerical work and menial tasks such as driving superiors to the airport and picking up meals for co-employees. She resigned from U.S. Asia in 1996.

The undisputed record reflects that Yuen occasionally conducted business from her home and that U.S. Asia had agreed to reimburse Yuen for long distance facsimiles and telephones calls made on behalf of U.S. Asia that were charged to Yuen's home telephone. Thus, after her resignation, Yuen tendered a request for reimbursement totaling between $100 and $200. U.S. Asia refused to pay the reimbursement request until Yuen paid U.S. Asia for certain fees and costs that it claimed she owed as a result of personal use of the company telephone account.

U.S. Asia's claim for fees and costs is based on its contention that Yuen made 58 personal long distance telephone calls charged to U.S. Asia's telephone account totaling $39.85. Further, U.S. Asia had a telephone policy in effect at the time these calls were allegedly made that stated:

1. There are to be NO personal long-distance telephone calls made other than those on personal telephone calling cards;

\* \* \* \* \* \*

5. **In the future, employees will be charged $10.00 plus the actual cost of the call for any personal long distance phone call that appears on the bill.**

(emphasis added). Pursuant to this policy, Yuen was assessed a $10.00 charge per call for personal use of U.S. Asia's corporate telephone account. Thus, U.S. Asia levied a charge of $580 against Yuen for her 58 personal calls in addition to the actual cost of the telephone calls, $39.85. Moreover, U.S. Asia further informed Yuen that it had determined that she had made several unauthorized payments out of petty cash. Thus, U.S. Asia informed Yuen (i) that she owed U.S. Asia more than her reimbursement request, and (ii) that U.S. Asia would reimburse her for business expenses only after she reimbursed U.S. Asia for her personal use of company resources.

Yuen filed a complaint in September 1996 alleging two causes of action against U.S. Asia: (i) a FLSA violation for failure to pay Yuen overtime wages, and (ii) a breach of contract claim for U.S. Asia's alleged failure to reimburse expenses. The FLSA claim seeks $25,000 and liquidated damages. The breach of contract claim seeks $175.

In response, U.S. Asia filed an answer and counterclaim. Specifically, U.S. Asia asserted two causes of action in the counterclaim, namely, (i) conversion, and (ii) unjust enrichment. Both counts seek the value of the personal long-distance telephone calls allegedly made by Yuen, as well as the value of allegedly impermissible disbursements from petty cash.

At the close of discovery, the parties each moved for summary judgment on questions

relevant to U.S. Asia's liability for overtime wages under FLSA.

## II.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. This standard is met where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence is not enough. To the contrary, when viewed in the light most favorable to the non-moving party, the evidence must be sufficient for a reasonable jury to find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). It is through the lens of these principles that the parties' summary judgment motions must be examined.

## III.

■ FLSA requires, *inter alia,* that covered employers pay their employees overtime wages, at the rate of time-and-a-half, for hours in excess of 40 worked in a single week. Yet, FLSA also contains what are commonly referred to as the "white-collar exemptions" for workers who are (i) executive, (ii) administrative, or (iii) professional employees. *See* 29 U.S.C. § 213(a)(1). Employees who fall into any of these three exempt categories need not be paid premium wages, *i.e.,* time and a half, for hours worked over 40 hours in a week. Department of Labor ("DOL") implementing regulations authoritatively elucidate these exemptions. *See* 29 C.F.R. Part 541; *see also* 29 U.S.C. § 213(a)(1) (relevant provisions of FLSA do not apply to "any employee employed in a ['white-collar'] capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary."); *Shockley v. City of Newport News,* 997 F.2d 18, 21 (4th Cir.1993) (DOL regulations define what constitutes "white collar" employee for purposes of FLSA exemptions). Thus, to benefit from any one of the three exemptions, an employer must demonstrate by clear and convincing evidence that an employee meets the DOL regulatory definition of the exemption. *See Shockley,* 997 F.2d at 21–22.

■ DOL regulations specify the various requirements, including education, training, and employment responsibilities, an employee must meet for inclusion in each of the three white collar exempt categories. Importantly, one requirement common to all three white collar exemptions is that they are available only for employees compensated on a "salary basis". *See Shockley,* 997 F.2d at 21.[1] Thus, to classify an employee as exempt from FLSA overtime requirements, an employer must, as a threshold matter, demonstrate by clear and convincing evidence that the employee was paid on a "salary basis". *Id.* If this threshold requirement is met, an employer must then further demonstrate by clear and convincing evidence that an employee was employed in a professional, administrative, or executive capacity. *Id.*

In the instant matter, Yuen contends that U.S. Asia cannot meet the burden of demonstrating that Yuen is paid on a "salary basis" for the purposes of FLSA. Accordingly, Yuen moves for summary judgment of the question of her entitlement to overtime wages under FLSA. In its cross application for summary judgment, U.S. Asia contends the undisputed record reflects both (i) that Yuen was paid on a "salary basis", and (ii) that Yuen qualifies as an administrative employee for the purposes of FLSA. Accordingly, U.S. Asia also moves for summary judgment on the question of Yuen's entitlement to overtime wages for the twenty months she worked for U.S. Asia as a Project Officer.

---

1. In some circumstances, employees paid on a fee basis may qualify for the administrative or professional exemption. *See* 29 C.F.R. §§ 541.2(3)(1), 541.3(e); *see also Shockley,* 997 F.2d at 21. A fee basis arrangement is "characterized by the payment of an agreed sum for a single job regardless of the time required for its completion." 29 C.F.R. § 541.313. U.S. Asia does not contend that Yuen was compensated on a fee basis. Thus, this form of compensation is not relevant here.

## A. Salary Basis

Yuen contends that U.S. Asia did not compensate her on a "salary basis" because: (i) Yuen was subject to a $10 charge for personal use of U.S. Asia's corporate telephone account; and (ii) Yuen was expected to work from 8:30 a.m. until 6:00 p.m. during non-holiday weekdays.[2] Because the undisputed record clearly and convincingly establishes that Yuen was a "salary basis" employee, summary judgment for Yuen is denied and summary judgment for U.S. Asia is granted on the question whether Yuen was paid on a "salary basis" for the purposes of FLSA.

### 1. *The $10 Telephone Use Charge*

■ To satisfy the "salary basis" requirement, an employee must receive as compensation a "pre-determined amount constituting all or part of his compensation", "which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).[3] The parties agree that Yuen was paid a fixed amount constituting all or part of her compensation. Yuen, however, contends that her compensation was "subject to" an impermissible reduction.

■ The Supreme Court recently explained that an employee is "subject to" a reduction in compensation where that employee is "covered by a policy that permits ... deductions in pay, 'as a practical matter.'" *See Auer v. Robbins*, —— U.S. ——, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). An employee is subject to reduction "as a practical matter" in two circumstances, namely, "if there is either an actual practice of making such deductions, or an employment policy that creates a 'significant likelihood' of such

deductions." *Auer*, —— U.S. at ——, 117 S.Ct. at 911 (approving Secretary of Labor's interpretation of whether employee is subject to an impermissible policy). A "substantial likelihood" of a deduction exists where an employer has "a clear and particularized policy, one which 'effectively communicates' that deductions will be made in specific circumstances." *Id.*

The record on U.S. Asia's administration of the $10 telephone charge is undisputed. Neither Yuen nor any other employee of U.S. Asia had their paycheck reduced as a result of using the U.S. Asia account for personal telephone calls. Indeed, Yuen's paycheck was never reduced for any reason during her employment at U.S. Asia. Moreover, no "clear and particularized" policy permitted or required a deduction from an employee's paycheck should that employee make a personal telephone call on the company account. Rather, it appears that U.S. Asia's policy was to request payment for personal telephone calls and any telephone use charges from individual employees when the telephone bill was presented. Thus, there is no "substantial likelihood" that U.S. Asia would have deducted the $10 charges from the paycheck of Yuen or, indeed, from the paychecks of any other U.S. Asia employee.

Yet, U.S. Asia did refuse to reimburse Yuen for business expenses until she reimbursed U.S. Asia for her personal long distance telephone calls and the related $10 charges. In effect, then, Yuen was "subject to" a reduction in her reimbursement request because of the $10 charge. Yuen contends that this reduction in reimbursement is an impermissible reduction in compensation for the purpose of the "salary basis" inquiry.

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

---

**2.** Yuen also contends that U.S. Asia cannot avail itself of the window of correction to correct its impermissible deductions given that the "window" is available to remedy inadvertent deductions, not inadvertent adoption of a policy of inadvertent deductions. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 616–17 (2nd Cir.1991), *cert. denied*, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). Because U.S. Asia does not assert a defense based on the window of correction, this contention is immaterial to the disposition of the instant matter.

**3.** Section 541.118(a) states:

Thus, the questions presented are (i) whether, on the facts of this case, reimbursement for business expenses is "compensation", as that term is used in FLSA and its implementing regulations, and, if so, (ii) whether the $10 charge is an impermissible reduction in that "compensation". If the answer to either of these questions is "no", then Yuen is a "salary basis" employee as defined by FLSA.

FLSA and its implementing regulations generally require employees paid on a "salary basis" to receive compensation not subject to reduction based on the quality or quantity of work performed. *See* 29 C.F.R. § 541.118(a). Webster's defines "compensation", in relevant part, as "payment for value received or service rendered." *See* Webster's Third Int'l Dictionary, at 463 (1993). Reading § 541.118(a) with the "salary basis" regulations *in pari materia* demonstrates that the compensation addressed in those regulations includes the latter clause of this definition, namely, "payment for ... service rendered." For example, several subsections of § 541 refer to an employee being "compensated for his services." *See* 29 C.F.R. §§ 541.2(e)(1), 541.2(e)(2), 541.1(f). Thus, the plain language of § 541 of the regulations points persuasively to the conclusion that "compensation", as that term is defined in the FLSA implementing regulations with respect to "salary basis", refers to payment for work performed by an employee.

■ This interpretation is supported by the purpose of FLSA and its implementing regulations. The question whether an employee is paid on a "salary basis" asks whether an employee's payment for the work she performs is more properly characterized as an hourly wage or salary. Indeed, the regulations provide that the prohibition against deductions requires that an employee must typically "receive his full salary" without regard to the number of days or hours worked. *See* 29 C.F.R. § 541.118(a). "Salary" is "fixed compensation paid regularly ... for services." *See* Webster's Third Int'l Dictionary, at 2003. Thus, the FLSA wage and hour requirements address the means by which an employer remunerates employees for the services they render, *i.e.*, their pay. This principle is recognized by cases in which courts have concluded that deductions from employee benefits, rather than salary, do not offend a FLSA "white-collar" exemption.[4] Moreover, § 541.118(a) itself is limited to reductions of "salary." Thus, this regulation explicitly forbids reduction of the periodic payment of a "pre-determined amount constituting all or part of ... compensation,"[5] *i.e.*, an employee's salary. In sum, the purpose of FLSA supports the conclusion drawn from the plain language of regulations, namely, that the compensation relevant to the "salary basis" inquiry is an employee's salary; the periodic fixed payments to an employee in return for services rendered.

These principles, applied here, point persuasively to the conclusion that Yuen's "compensation" was not subject to reduction for the purposes of FLSA. In the facts of this case, reimbursement of business expenses is not part of Yuen's fixed compensation paid periodically for services rendered. The amount of the reimbursement is not fixed, and it does not compensate an employee for services rendered. Reimbursement, rather, is merely an administrative convenience to an employer and employee. For example, rather than require an employee to ascertain a business expense in advance and to seek a disbursement to cover that expense, reimbursement allows the employee to pay expenses as they arise with the expectation that these expenses will be recovered. This

---

4. *See Barner v. City of Novato,* 17 F.3d 1256, 1261 (9th Cir.1994) (reduction in paid leave is not deduction of salary that defeats FLSA exemption for "salary basis" employees); *Fire Fighters Local 2141 v. City of Alexandria, Va.,* 720 F.Supp. 1230, 1232 (E.D.Va.1989), *aff'd,* 912 F.2d 463 (4th Cir.1990) (TABLE) (docking of personal or sick leave time is not a deduction of salary that defeats FLSA exemption for "salary basis" employees).

5. The regulation provides, in relevant part, that a "salary basis" employee

> regularly receives each pay period on a weekly, or less frequent basis, **a predetermined amount** constituting all or part of his compensation, **which amount** is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a)(emphasis added).

practice does not compensate an employee for her services. U.S. Asia employees do not realize a profit on, or additional compensation from, these reimbursed expenses for home telephone use.[6] Nor is an employee's salary greater in a month where she incurs a considerable amount of these expenses than in a month where she incurs none. Indeed, FLSA specifically provides that expense reimbursements are not included when calculating an employee's "regular rate of pay". *See* 29 U.S.C. § 207(e)(2). The reimbursement of business related expenses relevant here quite simply has nothing to do with Yuen's compensation for services rendered.

The only authority cited by Yuen for her proposition that reimbursement is "compensation" for the purposes of FLSA is a New York State labor statute that includes reimbursement for expenses in its definition of "benefits and wage supplements" which, in turn, are included in the statute's definition of "wages." *See* N.Y. Lab. Law § 198-c (McKinney 1997). This authority is unpersuasive. The New York statute provides a remedy where an employer refuses payments due and owing to an employee including wages, benefits, or reimbursements. The action created by this New York provision resembles Yuen's second cause of action, which alleges breach of contract against U.S. Asia for its failure to pay the requested reimbursement. For the purposes of FLSA's "salary basis" test, the question is not whether U.S. Asia has failed to pay Yuen an agreed amount of money but whether U.S. Asia charged Yuen with reductions which offend her status as a salaried, rather than an hourly wage, employee. In the final analysis, the New York wage statute's extension of compensation to include reimbursement for expenses does not support an extension of the definition of "compensation" in FLSA to include such reimbursement.

While U.S. Asia's refusal to reimburse Yuen for legitimate business expenses may be detrimental to her financial condition, it is not a reduction in Yuen's payment for services rendered. Thus, such a reduction does not demonstrate that Yuen worked for hourly wages rather than a salary, the question at the heart of the "salary basis" test. Accordingly, the reduction in reimbursement considered here does not offend Yuen's status as a "salary basis" employee pursuant to 29 C.F.R. § 541.118(a).

In the alternative, assuming, *arguendo*, that the business expense reimbursement at issue here constitutes "compensation" for purposes of FLSA, the question then becomes whether the $10 charge is an impermissible reduction that offends Yuen's status as a "salary basis" employee. Yuen contends that the $10 charge is inconsistent with the status of a "salary basis" employee because it violates the "no disciplinary deduction" rule, pursuant to which a reduction in pay for an infraction of company rules can undermine the "salary basis" status of an employee unless the infraction involves "safety rules of major significance." *See* 29 C.F.R. § 541.118(a)(5); *Auer*, —— U.S. at —— ——, 117 S.Ct. at 909–911; *Shockley*, 997 F.2d at 24 (applying the "no disciplinary deduction" rule).[7]

---

**6.** Courts interpreting federal tax law have recognized that some reimbursed business related expenses do constitute "profit" to an employee by covering personal expenses, such as meals, that an employee would have incurred notwithstanding a business purpose. *See, e.g., Commissioner v. Kowalski*, 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977) (cash reimbursements to state troopers for meals purchased while on duty are not excludible from income); *see generally* Daniel Halperin, *Business Deductions for Personal Living Expenses: A Uniform Approach to an Unsolved Problem*, 122 U. Pa. L.Rev. 859 (1974) (recommending that amount of personal satisfaction received from business expenses should be taxed as income). This principle is inapposite here because reimbursement for using a home telephone for business related long distance calls has nothing to do with personal satisfaction and is not taxable as income. Accordingly, whether a deduction from a reimbursement that is taxable income constitutes a deduction from "compensation" for purposes of FLSA is not presented here.

**7.** The Secretary of Labor prohibits disciplinary deductions, except for infractions of safety rules of major significance, because the Secretary embraces the view that

employees whose pay is adjusted for disciplinary reasons do not deserve exempt status because as a general matter true "executive, administrative, or professional" employees are not "disciplined" by piecemeal deductions from their pay, but are terminated, demoted, or given restricted assignments.

*See Auer*, —— U.S. at ——, 117 S.Ct. at 909.

FLSA's implementing regulations prohibit a reduction in the compensation of "salary basis" employees based on the "quality or quantity" of an employee's work. *See* 29 C.F.R. § 541.118(a). Yet, the $10 telephone charge considered here is wholly unrelated to the "quality or quantity" of an employee's work. Thus, the charge is not related to time that an employee spent on the telephone, *i.e.*, a reduction for the quantity of work time spent on personal matters. Nor is the charge intended to address the quality of an employee's work by discouraging personal telephone calls during work. Indeed, personal long-distance calls from company telephones are permitted during working hours without incurring a $10 charge provided those calls are made on an individual employee's calling card. And local personal calls from company telephones are permitted during working hours without incurring any charge whatsoever. This confirms that U.S. Asia's personal telephone call policy does not attempt to control the time an employee works or the manner in which she performs her work. Rather, the policy attempts to control the use of company property, namely the company's telephone charge account. Thus, assuming, *arguendo*, that the $10 charge represents a fine for the infraction of a work rule, neither the fine nor the infraction are related to the "quality or quantity" of an employee's work.

Yuen contends, nonetheless, that the $10 charge is a prohibited disciplinary deduction. Thus, Yuen would extend the "no disciplinary deduction" rule to prohibit any reduction in pay for the infraction of an employer's rules notwithstanding a relationship between the reduction and the "quality or quantity" of an employee's work. Such an extension is unsupported in law and unwarranted on principle.

The language and structure of FLSA and its implementing regulations do not support an extension of the "no disciplinary deduction" rule to prohibit deductions unrelated to the "quality or quantity" of work performed. Thus, the plain language of § 541.118(a) prohibits reductions based on "the variation in the quality or quantity of work performed." Disciplinary deductions are merely a subset of reductions that are prohibited. This conclusion is clear from the structure of the FLSA implementing regulations. Section § 541.118(a)(5) modifies subsection (a)'s prohibition of reductions for "quality or quantity" of work, allowing reductions in the case of infractions of "safety rules of major significance." *See* 29 C.F.R. § 541.118(a)(5). ·This exception compels the conclusion that deductions for violations of other, non-major, rules can imperil salary status. *See Auer,* —— U.S. at —— -——, 117 S.Ct. at 909–11. Yet, the exception does not compel the conclusion that **any** disciplinary deduction is a reduction based on the "quality or quantity" of work.[8] To the contrary, the plain language of § 541.118(a) provides only that reductions in pay based on the "quality or quantity" of work are prohibited, even where these reductions are related to an employee's violation of a work rule. *See Auer,* —— U.S. at —— -——, 117 S.Ct. at 909–911; *Shockley,* 997 F.2d at 24–25. Thus, the language and structure of the FLSA implementing regulations point persuasively to the conclusion that the prohibition of disciplinary deductions is limited to reductions based on the "quality or quantity" of work.

This limitation is supported by cases applying the "no disciplinary deduction" rule, which uniformly consider disciplinary deductions related to the "quality or quantity" of work. *Shockley* is illustrative. There, plaintiff police officers could be suspended without pay for failing to report absences or for failing to call-in absences from work. *Shockley,* 997 F.2d at 24. A Fourth Circuit panel

---

**8.** In *Shockley,* the panel concluded that "disciplinary reductions in pay, other than for violations of major safety rules, constitute reductions in pay based on the quantity and quality of an employee's work." *Shockley,* 997 F.2d at 25. This general language could be interpreted to conclude that all disciplinary reductions are reductions based on the "quantity or quality" of an employee's work. Yet, this question was not squarely presented in *Shockley,* or any of the cases cited therein, which all involved reductions based on the "quality or quantity" of work. *See id.* at 24; *Klein,* 990 F.2d at 285; *Service Employees International Union, Local 102,* 784 F.Supp. at 1511. Thus, *Shockley* does not compel the conclusion that disciplinary deductions wholly unrelated to "quality or quantity" of work imperil an employee's FLSA exemption.

concluded that this policy did not involve a "safety rule of major significance" and, thus, that reductions in pay for days missed while on suspension for violating this policy were "reductions in pay based on quantity and quality of work" inconsistent with status as a "salary basis" employee. *Id.* at 25.[9] *Shockley,* however, and all of the cases cited in *Shockley* for the "no disciplinary deductions" rule, each involve policies of unpaid suspensions for infractions of rules.[10] Thus, these policies amounted to a reduction of pay based on the "quality or quantity" of work. In other words, the suspensions reduced the quantity of work by an employee in a pay period and an employee's pay was reduced accordingly.

In sum, neither FLSA, its implementing regulations, nor cases interpreting the "no disciplinary deduction" rule support a prohibition of deductions wholly unrelated to the "quality or quantity" of work. Moreover, such a prohibition is unwarranted on principle. The essential question posed by the FLSA "salary basis" regulations is whether an employer's pay policies treat a worker more like an hourly wage employee or a salaried employee.[11] While many disciplinary deductions may be relevant to this question, other disciplinary deductions, such as the one considered here, are not.[12] The $10 telephone charge has nothing to do with whether Yuen was accountable either for the time she worked or the quality of the work she performed. Thus, this charge provides no basis for concluding that Yuen, while paid as a salaried employee, was actually treated by U.S. Asia as if she were paid an hourly wage.

In sum, the language and purpose of FLSA and its implementing regulations, and the cases construing the "no disciplinary deduction" rule, point persuasively to the conclusion that a "disciplinary deduction" must be a reduction based on the "quality or quantity" of work to imperil an employee's "salary basis" status. The enforcement of U.S. Asia's $10 telephone charge does not address the "quality or quantity" of an employee's work. Thus, even were reimbursement of business expenses "compensation" for the purposes of FLSA and its implementing regulations, U.S. Asia's $10 charge for long-distance personal calls on the company telephone account is not a reduction based on the "quality or quantity of work."

### 2. U.S. Asia's Work Hours Expectation

■ According to Yuen, further proof that she was not paid on a "salary basis" comes from (i) U.S. Asia's expectation that Yuen "work at least from 8:30 a.m. until 6:00 p.m. on non-holiday weekdays," and (ii) the fact that Yuen was told by a supervisor one day that she could not go home before 6:00 p.m., even though Yuen had no work to do.

■ "[A] company's general requirement that its employees work at least eight hours in a day strongly suggests that the company views these employees as hourly and not

9. Indeed, an unpaid suspension for a period of less than one week for a violation of a rule that is not a major safety rule is precisely the circumstance contemplated by the DOL in promulgating the rule prohibiting disciplinary deductions for "salary basis" employees. *See* 57 Fed. Reg. 37,-674 (1992); *see also Shockley,* 997 F.2d at 24–25.

10. *See, Shockley,* 997 F.2d at 24–25; *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.,* 990 F.2d 279, 285 (7th Cir.1993); *Lacey v. Indiana State Police Dep't.,* 810 F.Supp. 244, 247 (S.D.Ind.1992); *Service Employees Int'l. Union, Local 102 v. County of San Diego,* 784 F.Supp. 1503, 1511 (S.D.Cal.1992), *rev'd on other grounds,* 60 F.3d 1346 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996).

11. *See, e.g.,* 29 C.F.R. § 541.118(a) (providing that "salary basis" test requires that an "employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked").

12. Consider, for example, the case of an employee who damages an employer's laptop computer while using the computer at home for personal reasons, as allowed by company policy. In this event, the employer might reasonably expect the employee to pay for the damage. Indeed, an employer might seek to set off the cost of repair against an employee's paycheck and surely could do so without jeopardizing the employee's FLSA exempt status, for this reduction would have nothing to do with the "quality or quantity" of the employee's work. It is easy to see that this hypothetical case is materially different from an employer reducing an employee's pay because of tardiness, unreasonable absences, unpaid suspensions, or poor work performance.

salaried." *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 617 (2nd Cir.1991); *see also Kinney v. District of Columbia,* 994 F.2d 6, 11 (D.C.Cir.1993); *Abshire v. County of Kern,* 908 F.2d 483, 486 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). Yet, there is a significant distinction between an employer's expectations and requirements for the purposes of FLSA. Employees in the cases relied on by Yuen were **required** to work certain numbers of hours or they would face reductions in their salaries.[13] By contrast, Yuen was merely **expected** to be at work during office hours. Such expectations are incident to the employer-employee relationship of myriad workers traditionally covered by the "white-collar" exemption to FLSA. Significantly, Yuen was not **required** to be in the office from 8:30 a.m. until 6:00 p.m. Indeed, the undisputed record reflects that Yuen's pay was never reduced for instances in which she was out of the office during normal work hours for personal reasons. Moreover, Yuen concedes that U.S. Asia's work hour expectations do not, without more, offend her salaried status. Accordingly, U.S. Asia's work hour policy does not convert Yuen to an hourly, rather than a "salary basis", employee.

In sum, neither the $10 telephone charge nor the expectation that Yuen be at the office during normal working hours offends Yuen's status as a "salary basis" employee. Accordingly, summary judgment is appropriate for U.S. Asia on the question whether Yuen was paid on a "salary basis."

## B. Administrative Employee

Resolution of the "salary basis" issue does not end the analysis; where an employee is paid on a "salary basis", an employer must then further demonstrate by clear and convincing evidence that an employee was employed in a professional, administrative, or executive capacity. In this regard, U.S. Asia contends that Yuen fell into the "white collar" exemption for administrative employees. Department of Labor regulations provide

both a "short test" and a "long test" for determining whether an employee's primary duty is administrative. *See Shockley,* 997 F.2d at 21–22. The "short test" applies where, as here, an employee is paid more than $250 per week. 29 C.F.R. § 541.2(e)(2). Pursuant to the "short test" U.S. Asia must prove that:

(1) Yuen was paid on a "salary basis" at a rate of at least $250 per week;

(2) Yuen's primary duty consisted of office or non-manual work and her primary duty was directly related to management policies or the general business operations of U.S. Asia or U.S. Asia's customers; and

(3) Yuen's primary duty required the exercise of discretion and independent judgment on matters of consequence.

29 C.F.R. § 541.2.

As discussed, *supra* Part II. A., Yuen was paid on a "salary basis". Further, it is undisputed that her pay was at a rate higher than $250 per week. Thus, the questions presented are (i) whether Yuen's primary duty consisted of office or non-manual work and was directly related to the management policies or the general business operations of U.S. Asia or its customers, and (ii) whether Yuen exercised discretion and independent judgment on matters of consequence in performing this primary duty.

The FLSA implementing regulations define "primary duty" with respect to all three white collar exemptions. Specifically, the regulations provide that "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103; *see also* 29 C.F.R. § 541.206(b). The 50 percent "rule of thumb", however, "is not the sole test," and exempt work that constitutes less than half an employee's time can still be a primary duty "if the other pertinent factors support such a conclusion." *Id.; see also* 29 C.F.R. § 541.103 ("primary duty" based on all the facts of a particular case); *Haines v. South-*

---

**13.** For example, in *Martin,* the employer docked an employee for working less than a forty hour workweek unless the employee made up the time missed or charged the time missed to sick leave or vacation. *Martin,* 949 F.2d at 617.

*ern Retailers, Inc.*, 939 F.Supp. 441, 449 (E.D.Va.1996)(factual dispute over percentage of time spent on executive function does not preclude summary judgment for employer). These "other pertinent factors," *i.e.*, the factors relevant to a specific "white-collar" exemption, are designed to determine an employee's principal duty. *See Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir. 1990). The principal, or primary, duty of an employee will

> usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.

*Id.* at 1227. Accordingly, an employee's primary duties are administrative for the purposes of the FLSA "white-collar" exemptions if an employee spends half of her time on administrative duties or her administrative duties have "special significance relative to the employee's other duties." *See Shockley*, 997 F.2d at 28.

■ According to U.S. Asia, these principles, applied here, compel summary judgment on the question whether Yuen's primary duties were administrative. In support, U.S. Asia cites the record evidence in which Yuen described duties such as working as a "key member of a telecommunications team", "work[ing] closely with senior management of [ ] client companies", "perform[ing] extensive market research, analysis and feasibility studies" and "complet[ing] extensive research identifying potential areas of new business development in China, Taiwan, Korea & Japan." These duties, by U.S. Asia's lights, are directly related to the management

policies or general business operations of U.S. Asia or its customers. Accordingly, U.S. Asia contends (i) that these duties were administrative duties, and (ii) that these duties were Yuen's primary duties notwithstanding whether or not Yuen spent half of her time working on these projects.

■ Yuen does not dispute that these duties represent part of her duties while employed as a Project Officer at U.S. Asia.[14] She declares, however, that these duties represent a small percentage of the work she performed at U.S. Asia. Yuen alleges her "primary duties" were as a research assistant and clerical worker. Thus, Yuen opposes summary judgment on the basis of the existence of a disputed factual issue, namely, the nature, extent and relative importance of Yuen's various duties while employed at U.S. Asia.

The question of how Yuen spent her work time at U.S. Asia is a question of fact for the fact finder. *See Icicle Seafoods Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986). And it is clear that this question is genuinely disputed. U.S. Asia contends that this dispute is immaterial, given that the 50 percent rule is only a rule of thumb and Yuen's primary duties were administrative notwithstanding the time she spent on non-exempt tasks. In other words, U.S. Asia contends that Yuen's admissions with respect to her performance of certain administrative duties demonstrates conclusively that these administrative duties were of "special significance" and, thus, were Yuen's primary duty regardless of how Yuen spent her work time. To be sure, the 50

14. Almost all of the record evidence concerning Yuen's duties come from her testimony or documents she produced. Yuen's statements concerning leadership and substantial business development responsibilities come from applications Yuen prepared for the purpose of gaining admittance to business school. At deposition, Yuen affirmed the accuracy of the statements made in these applications, but stated that the applications focused on a small percentage of her duties while the bulk of her duties were mundane and menial. (Parenthetically, one wonders whether the business schools were intended to understand this.) Further, in an unemployment compensation application, Yuen listed herself as a "consul-

tant". And, finally, in her answers to interrogatories, Yuen stated that her duties "included performing work assignments and tasks assigned to me to help support [client projects in Asia]." It is true that a party cannot oppose summary judgment by submitting an affidavit or other declaration which is in conflict with that party's other record testimony, thereby creating a "sham" issue of fact. *See Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir.1984). But this case does not present a "sham" issue of fact. Instead, Yuen stands by all of her characterizations of duties she performed for U.S. Asia, contending that the relative significance of these different duties necessarily involves the resolution of certain facts.

percent rule is only a rule of thumb. *See* 29 C.F.R. §§ 541.103, 541.206(b). Yet, summary judgment is nonetheless inappropriate on the present record.

 Whether a duty is administrative and whether an employee's duties, taken as a whole, exempt that employee from FLSA overtime requirements are both questions of law for the court. *See Icicle Seafoods,* 475 U.S. at 714, 106 S.Ct. at 1530; *Shockley,* 997 F.2d at 26. But the significance of duties relative to one another is a factual question. *See Shockley,* 997 F.2d at 26. Thus, a deviation from the 50 percent rule of thumb "requires consideration of the factual circumstances for which a jury is more appropriate." *Clark v. J.M. Benson Co., Inc.,* 789 F.2d 282, 286 n. 2 (4th Cir.1986). Accordingly, factual disputes exist even if U.S. Asia proceeds under the "special significance", rather than the 50 percent, definition of "primary duty." And, indeed, this result is sensible given that these definitions are interrelated. Put another way, the "special significance" definition acknowledges that an employee may be exempt even where non-exempt tasks collateral to an exempt function take up more than half of an employee's time. But as the percentage of time for non-exempt tasks increases, it becomes less likely that the employer derives its principal value from the employee's exempt duties. This merely reflects the obvious point that the "primary duty" inquiry is different where an employee spends 52 percent of her time on non-exempt tasks rather than 75 percent of her time on such tasks.

The record reflects a factual dispute with respect to the time Yuen spent on various duties and responsibilities while at U.S. Asia and the significance of her exempt duties as compared with her non-exempt duties. Thus, viewed in the light most favorable to Yuen, and in light of U.S. Asia's "clear and convincing" burden of proof with respect to Yuen's satisfaction of the DOL requirements for a FLSA exemption,[15] the record does not permit judgment as a matter of law for U.S. Asia on the question whether Yuen's primary duties at U.S. Asia were administrative.[16]

 In the alternative, summary judgment for U.S. Asia is inappropriate on the question of Yuen's exemption from FLSA overtime benefits because of factual issues with respect to the third element in the administrative employee "short test." *See* 29 C.F.R. § 541.2. Yuen is exempt from the overtime benefits of FLSA only if U.S. Asia can prove by clear and convincing evidence that Yuen exercised discretion and independent judgment on matters of consequence in the performance of her primary duty. *Id.* The regulations recognize that almost every employee uses some discretion and independent judgment with respect to their performance of duties. *See* 29 C.F.R. § 541.207(d)(1). Thus, to demonstrate an exempt administrative status, "the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." *Id.* Whether an employee's duties require "real and substantial" discretion, and whether this discretion is exercised with re-

---

15. *See Shockley,* 997 F.2d at 21–22. Where, as here, the record evidence presents a close case with respect to the nature and significance of an employee's duties, the high burden of proof on an employer seeking to classify an employee as exempt under FLSA tips the balance in favor of a denial of summary judgment.

16. Yuen further contends that the tasks highlighted by U.S. Asia as administrative duties are actually "production" rather than "administrative" duties. *See* 29 C.F.R. § 541.205(a). The regulations distinguish between employees whose primary duties involve administering the business affairs of an enterprise from those whose primary duty is producing the commodities, either goods or services, that an enterprise markets. *Id.; See Dalheim,* 918 F.2d at 1230. The former

employees are exempt from FLSA overtime requirements while the latter are not. While many of the tasks Yuen performed appear to be administrative in nature, other courts have recognized that employees commonly labeled "white collar" can, nonetheless, be production employees. *See, e.g., Dalheim,* 918 F.2d at 1230–31 (concluding that television news producers are non-exempt production employees). And whether an employee is an administrator or a producer is determined from the facts concerning that employee's duties, discretion and control. *Id.* at 1230. Accordingly, this "production" or "administrative" question is appropriately addressed after the development of a more complete factual record at trial.

spect to "matters of consequence" are questions of fact. *Clark*, 789 F.2d at 288. The documentary evidence in the record reflects substantial discretion exercised by Yuen with respect to organizing and supervising matters of consequence for both U.S. Asia and its clients. Yet, Yuen declares under oath that she was closely supervised with respect to all or a majority of her duties. Thus, viewed in the light most favorable to Yuen, the record evidence does not permit the conclusion that U.S. Asia has proven by clear and convincing evidence that Yuen exercised independent judgment and discretion on matters of consequence with respect to her primary duty.[17]

In sum, given that factual issues remain with respect to the nature and extent of Yuen's different duties while employed at U.S. Asia, and Yuen's exercise of discretion in the performance of her various duties, summary judgment for U.S. Asia on the question whether Yuen is an administrative employee exempt from the overtime provisions in FLSA must be denied.

An appropriate Order has issued.

---

**17.** It is worth noting that consideration of the third element of the administrative employee "short test" is premature where, as here, an employee's "primary duty" has not been determined. This is so because an administrative employee's exercise of independent judgment and discretion must be with respect to her primary duty. *See* 29 C.F.R. § 541.2. Nonetheless, because the record clearly reflects genuinely disputed facts on the question of Yuen's exercise of discretion with respect to all of her duties, these disputed facts provide an alternative basis for concluding that summary judgment is inappropriate here.