Kenneth **HOFFMANN and Gloria Curtis,**
**on behalf of themselves and all others**
**similarly situated, Plaintiffs,**

**v.**

**SBARRO, INC., Defendant.**

**No. 97 Civ.4484 (SS).**

United States District Court,
S.D. New York.

Oct. 22, 1997.

Stewart, Estes & Donnell, M. Reid Estes, Jr., Jeffrey L. Peterson, Nashville, TN, for Plaintiffs.

George Shebitz & Assoc., Frederick J. Berman, New York City, for Plaintiffs.

Paul, Hastings, Janofsky & Walker, L.L.P., Ronald Kreismann, Samuel D. Rosen, New York City, for Defendant.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

In this collective action brought under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.*, the Court has be-fore it two motions. The first, an order to show cause filed by plaintiffs, seeks the Court's approval for distribution of class notice and opt–in consent forms to potential plaintiffs. By implication, this motion asks the Court to decide whether plaintiffs' action may be maintained as a collective action under the FLSA. The second motion, brought by defendant, seeks judgment on the pleadings or, in the alternative, summary judgment.

For reasons discussed below, plaintiffs' motion is granted and defendant's motion is denied without prejudice to bringing a motion for summary judgment after the close of discovery.

## I. *Background*

The FLSA requires covered employers to pay their employees overtime wages, at the rate of time and a half, for hours in excess of 40 hours worked in a single week. 29 U.S.C. § 207. Exempt, however, from the Act's overtime requirements are employees who are "employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(1). Because the FLSA is a remedial act, this exemption must be narrowly construed and the employer bears the burden of showing that a claimed exemption applied to its employees. *See Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974), and *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)).

The administrative regulations promulgated pursuant to the FLSA establish both a salary test and a duties test for determining whether an employee is employed "in a bona fide executive, administrative or professional capacity." See 29 C.F.R. § 541.1 (executive); § 541.2 (administrative), § 541.3 (professional). The salary test contains two elements: a requirement that the exempt employee receive no less than a specified level of compensation, and a requirement that the employee's compensation be paid "on a salary

basis." Plaintiffs' allegations in this case address only the latter component of the salary test: whether they have been paid "on a salary basis" as defined by 29 C.F.R. § 541.118(a). The regulations provide that to be paid "on a salary basis," an employee must receive compensation in "a predetermined amount ... not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).[1] The regulations further provide, in a subsection commonly referred to as the "window of correction," that in certain circumstances an employer that has made an improper deduction to salary can take corrective action to restore retroactively the employee's exempt status. 29 C.F.R. § 541.118(a)(6).

Defendant, Sbarro Inc. ("Sbarro"), operates a nationwide chain of Italian–style restaurants. Plaintiffs Kenneth Hoffmann ("Hoffmann") and Gloria Curtis ("Curtis") are the former general manager and co-manager, respectively, of the same Sbarro's restaurant in Memphis, Tennessee. Plaintiff Steve Bowers ("Bowers"), who "opted in" as a plaintiff on September 11, 1997, is a former general manager of two Sbarro restaurant locations—one in Mississippi, and one in Tennessee. Plaintiffs filed their Complaint on June 18, 1997, seeking to bring a collective action under the FLSA on behalf of all current and former Sbarro restaurant managers (except assistant managers) since 1993 for unpaid overtime compensation. Plaintiffs allege that Sbarro misclassified its restaurant managers as exempt "executive" employees, thereby circumventing the Act's overtime requirements, when in fact defendant's company–wide policies and practices violated the terms of the exemption.[2] Specifically, plaintiffs charge that defendant violated the salary–basis test by requiring restaurant managers to reimburse the company for cash shortages, inventory shortages or other losses occurring under their supervision. Plaintiffs allege that they were required as a condition of their employment to sign a form agreement (called the "Agreement to Reimburse Losses") authorizing defendant to deduct from their wages the amount of any cash shortage or loss. Plaintiffs further allege that defendant implemented its reimbursement policy either by docking managers' paychecks or by requiring managers to make out–of–pocket reimbursements to the company. As a result of defendant's actions, plaintiffs claim that all restaurant managers employed by defendant during the last three years were in fact subject to reductions in their compensation and, therefore, are entitled to unpaid overtime, liquidated damages and attorney's fees and costs.

Defendant denies having committed any wrongdoing under the FLSA. However, defendant concedes that, prior to the filing of plaintiffs' Complaint, it had a cash control policy in place which required managers to reimburse the company for losses. Defendant also concedes that it required all restaurant managers to sign the Agreement to Reimburse Losses. In that regard, defendant has submitted to the Court "true and correct" copies of the "Sbarro Cash Control Policy" (Exhibit ("Exh.") D to Defendant's Notice of Motion for Judgment on the Pleadings (hereafter "Def. Notice of Motion")) and copies of the Agreement to Reimburse Losses signed by Hoffmann and Curtis (Exhs. B and C to Def. Notice of Motion). Moreover, defendant admitted to the Court during oral argument held on October 8, 1997, that pursuant to these policies, some restaurant managers (although defendant did not specify how many) in fact experienced salary deductions. (Transcript of October 8, 1997 hearing ("Oct. 8 Tr.") at 2–3.)

---

1. The regulation carves out several exceptions to this rule, however. Deductions may be made to an employee's compensation without upsetting salaried status for absences of a day or more for personal reasons other than sickness or accident, or for absences of a day or more caused by sickness or disability if made in accordance with a bona fide sickness and disability plan. 29 C.F.R. §§ 541.118(a)(2) & (3). In addition, deductions imposed "in good faith for infractions of safety rules of major significance" will not affect an employee's salaried status. 29 C.F.R. § 541.118(a)(5).

2. The one exception is in the case of assistant managers. Plaintiffs do not contest that employees in this job position were hourly–paid and classified as non–exempt. Accordingly, plaintiffs do not seek relief on their behalf.

**252**

### (a) The Sbarro Cash Control Policy

The Sbarro Cash Control Policy explicitly directs itself to "management employees" and contains two sections: one on the duties of restaurant management and one on the duties of area directors.[3] The section addressed to restaurant management sets forth the manager's duties for money-related activities, such as supervising cash registers, making deposits and handling cash. It further provides that "all restaurant management will sign an agreement to reimburse losses as a condition of their employment." Finally, the last section of the policy document, entitled "Disciplinary Procedure" states that:

> Failure to follow the cash control policy outlined above is considered a severe breach of conduct and the General Manager and other management of the restaurant will be subject to disciplinary action up to and including termination or employment depending on the frequency and severity of the loss. . . . The willingness of the General Manager or other assigned managers to reimburse the company for losses will be considered in the disciplinary action taken.

(Exh. D to Def. Notice in Motion.) Nothing in the policy document is addressed to non-managerial employees.

### (b) The Agreement to Reimburse Losses

The Agreement to Reimburse Losses, which defendant admits it included in all managers' hiring packets, states, in part:

> I hereby authorize the Company to withhold from any wages, salary, bonus, vacation pay, and any other compensation due me for my services, and any other funds due me from the company or its affiliates, the total amount of such losses in installments as determined by the Company until said amount of such losses is paid in full.

(Exh. C to Def. Notice of Motion.) The Agreement also authorizes defendant to assign the manager's wages or other compensation to cover losses.

Defendant contends that it required all of its restaurant employees, both salaried and non–salaried, to sign the Agreement to Reimburse Losses. In particular, defendant stresses that assistant managers—who are non–salaried and non–exempt—were likewise required to sign the Agreement.

### (c) Defendant's Allegations that It Rescinded the Policy

Defendant alleges that it has rescinded its cash control policy. As set forth in the affidavit of Jim O'Shea, defendant's Vice President of Human Resources, defendant asserts that following receipt of the Complaint in this action, it revised its cash control policy and announced a policy change in a memorandum dated July 22, 1997. (Affidavit of Jim O'Shea in Opposition to Plaintiffs' Request for Issuance of Expedited Notice (hereafter, "O'Shea Aff.").) The memorandum states, in relevant part:

> To the extent any prior agreements, policies or practices may have authorized reimbursement of losses, they are no longer in effect. The Company will not deduct cash shortages or other monetary losses from an employee's salary, wages, vacation pay, bonus or other compensation.

(Exh. A to O'Shea Aff.) Defendant further contends that, as part of its policy revision, it reviewed its records to determine which current and former exempt managerial employees may have had their compensation reduced because of cash shortages or other losses. Defendant contends it then reimbursed those employees for the amount of their losses, plus accrued interest at 9%, by sending them reimbursement checks on July 29, 1997, with accompanying correspondence stating that questions should be directed to Jim O'Shea. (O'Shea Aff. at ¶ 5.) Defendant claims that, by taking these actions, it availed itself of the "window of correction" under 29 C.F.R. § 541.118(a)(6).

Plaintiffs dispute that defendant has fully reimbursed managers for past losses, however. While Hoffmann acknowledges that he

---

**3.** Area directors appear to be the supervisors of restaurant managers and are responsible for ensuring that restaurant managers comply with defendant's cash control policy. Because plaintiffs do not purport to bring this lawsuit on behalf of area directors, the Court need not concern itself with the duties of persons in this position or the policies applicable to them.

received reimbursement checks from defendant purporting to repay him for his out-of-pocket losses, he contends these checks did not fully reimburse him for all of his losses. Curtis and Bowers maintain they have received no reimbursement checks at all from defendant, although they both allege having made numerous out-of-pocket reimbursements to cover cash shortages. Indeed, defendant in its multiple submissions to the Court has never explained what methodology it used to identify employees who incurred losses as a result of defendant's cash control policy, or whether defendant sought to reimburse both employees who made out-of-pocket reimbursements to the company and employees who were subject to pay docking.

Little discovery has been taken in the action to date, other than the deposition by defendant of Hoffmann and Curtis. Significantly, at deposition, Hoffmann and Curtis both admitted that no money had ever been deducted from their actual paychecks to cover cash shortages or other losses (Hoffmann Tr. at 75; Curtis Tr. at 65–66).[4] However, they testified that they frequently covered cash shortages by making out-of-pocket reimbursements to the company. (Hoffmann Tr. at 76; Curtis Tr. at 64–65).

## II. *Motion for Judgment on the Pleadings*

The Court will address defendant's motion for judgment on the pleadings first. Obviously, if the Court deems this action ripe for dismissal, it would be futile to send class notice to other potential plaintiffs, and plaintiffs' motion would be moot.

### A. *Standard of Review*

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). A district court's function is to assess the legal feasibility of the complaint. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Allegations contained in the complaint must be construed favorably to the plaintiff. *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. NYC Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

In considering a Rule 12(b)(6) motion, a court must look to: (1) the facts stated on the face of the complaint; (2) documents appended to the complaint; (3) documents incorporated in the complaint by reference; and (4) matters of which judicial notice may be taken. *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993) (citing *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)). *See also Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993) (same).

Furthermore, Rule 12(c) provides that:

> [i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). The pleadings in this case consist of plaintiffs' Complaint, defendant's Answer, and the Agreement to Reimburse Losses, which is incorporated into pleadings by reference.

### B. *Background on the Law Governing Plaintiffs' Claims for Relief*

As noted above, exempt status from the FLSA's overtime provisions requires that employees be paid on a "salary basis", which in turn requires that their "compensation"

---

4. Excerpts of Hoffmann's and Curtis' deposition testimony are attached as Exh. G to Def. Notice of Motion and Exh. I to the Affidavit of M. Reid Estes in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, respectively.

not be "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). In *Auer v. Robbins,* —— U.S. ——, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court recently announced the proper standard for determining whether an employee's compensation is "subject to reduction" and therefore in violation of the salary-basis test: The test is violated and exempt status should be denied "when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' "[5] *Id.* at ——, 117 S.Ct. at 911. That standard is met, *Auer* provides, if a plaintiff can show *either* of two things: (i) "an actual practice of making such deductions"; or (ii) "an employment policy that creates a 'significant likelihood' of such deductions." *Id.* To find a "significant likelihood" of deductions, *Auer* further provides that there must be evidence of "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." [6] *Id.* Thus, under the *Auer* test, to state a claim for relief, plaintiffs must make a prima facie case that their compensation was "subject to reduction" either because defendant had an actual practice of making improper deductions, or because they were subject to a policy that created a significant likelihood of such deductions.

Defendant argues that plaintiffs fail to state a claim under the first prong of *Auer,* *i.e.* that plaintiffs were subject to an "actual practice" of deductions, because (1) both Hoffmann and Curtis testified at deposition that their own paychecks were never docked, and (2) plaintiffs' alleged out-of-pocket reimbursements can not be considered reductions in "compensation" for purposes of determining exempt status under the salary-basis test and, therefore, are irrelevant. As to the second prong of *Auer, i.e.* that plaintiffs were

subject to a policy that created a "significant likelihood" of deductions, defendant argues that plaintiffs fail to state a claim because the Sbarro Cash Control Policy and Agreement to Reimburse Losses applied to both hourly paid, non-exempt employees and to salaried exempt employees, and did not clearly and unambiguously indicate that deductions would (or would likely) be made from exempt employees' salaries. Finally, defendant contends that judgment on the pleadings is further warranted based on defendant's affirmative defense under the "window of correction" provision set forth in the FLSA regulations at 29 C.F.R. § 541.118(a)(6). That regulation provides, in part, that "where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." 29 C.F.R. § 541.118(a)(6). Defendant contends that plaintiffs' claims are legally barred under this provision because, even if defendant had made improper wage deductions, such deductions were made "for reasons other than lack of work," and defendant cured any impropriety by renouncing the offending policies and reimbursing those employees who, according to defendant's records, had been subject to pay deductions.

### Discussion

As a threshold matter, defendant's motion is inappropriately brought under Rule 12(c). In seeking judgment on the pleadings, defendant relies on numerous submissions outside the pleadings, including plaintiffs' deposition testimony, Jim O'Shea's affidavit, the Sbarro Cash Control Policy, and other documents

---

**5.** This interpretation of the "salary basis" test was the approach set forth by the Secretary of Labor in its amicus brief filed in *Auer* at the request of the Supreme Court. The Court held that, because the Secretary's interpretation was not "plainly erroneous or inconsistent with the regulations," it was controlling. *Id.* —— U.S at ——, 117 S.Ct. at 911 (citations omitted).

**6.** The Supreme Court explained that the requirement of a clear and particularized policy "avoids the imposition of massive and unanticipated overtime liability (including the *possibility* of substantial liquidated damages) in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." *Id.* —— *U.S. at* ——, 117 S.Ct. at 911 (citation omitted).

that are not part of the pleadings.[7] If the Court considers these submissions, it must convert defendant's motion into one for summary judgment and give plaintiffs an opportunity to respond. *See* Fed.R.Civ.P. 12(c). The Court will not do so, however, because a summary judgment motion at this juncture is premature. Little discovery has been taken thus far in the proceeding, and numerous genuine issues of material fact persist. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (summary judgment will be granted only where there are no genuine issues of material fact). Defendant's own admission that "some" employees' wages were docked pursuant to its cash control policy (Oct. 8 Tr. at 2), supports plaintiffs' claims and underscores the need for discovery concerning the origin, scope and extent of defendant's cash control policies and practices. At this early stage in the proceeding, the Court has before it no evidence of how many employees were subject to reductions in their compensation to cover cash shortages, the circumstances under which such deductions occurred, or over what period of time such deductions occurred. Without this information, it would be impossible for the Court to determine whether, under the *Auer* standard, defendant had an "actual practice" of allegedly improper deductions, as well as whether Hoffmann, Curtis and other potential plaintiffs were subject to a "significant likelihood" of deductions.[8] Similarly, discovery is required to determine whether and to what extent defendant's policies applied both to salaried and non–salaried employees.

The Court also rejects defendant's argument that, no matter what violations it may have committed, it is entitled to avail itself of the window of correction and can thereby bar plaintiffs' claims by preemptively reimbursing any potentially improper deductions. At issue is the proper construction of § 541.118(a)(6), which provides in full:

> The effect of making a deduction which is not permitted under these interpretations [of the "salary basis" test] will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). Defendant contends that the last sentence of this provision gives employers an absolute right to cure improper deductions retroactively, and thereby avoid overtime liability, whenever a deduction was made for reasons other lack of work.[9] Plaintiffs, however, argue that when

---

**7.** Defendant relies on plaintiffs' deposition testimony, which the Court can not consider on a Rule 12(c) motion, to argue that Hoffmann and Curtis never had money deducted from their salary checks and, therefore, cannot show an "actual practice" of deductions under the first prong of *Auer*. Similarly, the Sbarro Cash Control Policy—upon which defendant relies in arguing that plaintiffs fail to state a claim under prong two of *Auer*—is neither appended to, nor incorporated by reference by the pleadings. And in arguing that it has availed itself of the "window of correction," defendant relies exclusively on the affidavit of Jim O'Shea and other documents attached as exhibits to defendant's motion, all of which are extrinsic to the pleadings.

**8.** Defendant's suggestion that Hoffmann and Curtis could not possibly show an "actual practice" of deductions because their own salary checks were not reduced to cover cash shortages

is incorrect. Hoffmann and Curtis need not themselves have suffered salary deductions to show that an "actual practice" of such deductions existed within the company. Furthermore, deductions taken in other employee's wages may be probative evidence that Hoffmann and Curtis were subject to a "significant likelihood" of deductions.

**9.** It is not disputed that the deductions in this case were made for reasons other than lack of work. It also is not disputed that, as a matter of law, the window of correction may be available to an employer where an improper deduction either was "inadvertent" or was made "for reasons other than lack of work." *See Auer,* —— U.S. at ——, 117 S.Ct. at 912 (confirming that these terms should be read disjunctively).

this sentence is read in context of the entire provision, the availability of the window of correction "will depend upon the facts in the particular case," and that it is unavailable where an employer had a settled policy or widespread practice of making improper deductions.

Admittedly, the text of the regulation is ambiguous in this respect; it addresses the permissible correction only of "a deduction" that is improper. It does not, however, specify whether this curative measure is available in cases of multiple or recurring improper deductions or a longstanding policy permitting such deductions. Moreover, courts in the past have disagreed on this point. Some courts have interpreted the last sentence broadly, holding that the "window of correction" is available even in cases where employers had longstanding policies and practices of making improper deductions from employees' pay. See *Kuchinskas v. Broward County*, 840 F.Supp. 1548 (S.D.Fla.1993) (defendant entitled to window of corrections despite settled policy permitting improper deductions), *aff'd*, 86 F.3d 1168 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Simmons v. City of Fort Worth, Tex.*, 805 F.Supp. 419, 424–25 (N.D.Tx.1992) (window of correction applicable although city-wide policy in effect over four years resulted in over 20% of the city's exempt employees suffering improper deductions).[10] Other courts, however, including the Second Circuit, have interpreted the "window of correction" exception more narrowly, holding that it is applicable only in cases of one–time or inadvertent deductions. See *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 616 (2d Cir.1991) ("The exception in subsection (6) applies to one–time or inadvertent deductions, not to a settled policy of subjecting the

pay of employees to reduction") (quoting *Knecht v. City of Redwood City*, 683 F.Supp. 1307, 1311 (N.D.Cal.1987)). *See also Close v. State of New York*, 1996 WL 67979, at *9 (N.D.N.Y.1996) (relying on *Martin*, declaring that window of correction applies only "to occasional and inadvertent deductions"), *vacated on other grounds*, 1996 WL 481550 (N.D.N.Y. Aug.19, 1996), *judgment reinstated*, 125 F.3d 31, 1997 WL 540848 (2d Cir. Sept.4, 1997). *Accord Abshire v. County of Kern*, 908 F.2d 483, 489 (9th Cir.1990) (window of correction unavailable to employer whose express policy permits improper deductions).

Significantly, this split was not resolved by *Auer* because the Supreme Court was not asked to decide whether the window of correction could apply in cases of recurrent or multiple violations. Rather, the facts in *Auer* presented the easy case: the Court found that only one improper deduction had been made in "unusual circumstances" in the case of one employee. —— U.S. at ——, 117 S.Ct. at 912. Therefore, under any analysis, the defendant in *Auer* was entitled to avail itself of the window of correction. But while the Supreme Court did not reach the more difficult issue of what to do in cases of multiple, recurring violations, the Secretary of Labor, in its Amicus Brief in *Auer*, explained in no uncertain terms that it does not view the window of correction as available in such circumstances:

> Respondents can correct the single disciplinary deduction of less than one week's pay by satisfying the terms of the "window of correction" regulation. 29 C.F.R. 541.118(a)(6). *The window of correction is not open when an employer engages in a pattern of improper deductions.* The win-

10. Significantly, even in *Kuchinskas* and *Simmons*, defendants were exonerated from liability based on a window of correction defense only following the completion of discovery, when those courts could determine, based upon the facts, which employees had suffered improper deductions and what curative measures were required. See *Kuchinskas*, 840 F.Supp. at 1557 (judgment rendered for defendant based on window of correction defense only after evidence from two-day bench trial showed that defendant had reimbursed the affected employees and taken other steps to ensure improper practice was

discontinued); *Simmons*, 805 F.Supp. at 425 (plaintiffs' claims dismissed based on window of correction defense only after uncontroverted evidence at summary judgment identified all improper deductions and demonstrated that defendant had fully reimbursed affected employees). Here, there is simply no basis for the Court to dismiss plaintiffs' claims at the pleadings stage based upon defendant's blanket assertion that it has rescinded its policies and fully reimbursed managers for potentially improper deductions—an assertion plaintiffs dispute.

dow is open, however, to correct a one-time deduction of less than one week's pay [as was present in *Auer* ].

(Amicus Brief of the United States at 15, Exh. E to Plaintiffs' Reply Brief in Support of Order to Show Cause) (emphasis added).[11]

As *Auer* made exceedingly clear, the Secretary's interpretation of his or her own regulations is entitled to extreme deference. —— U.S. at ——, 117 S.Ct. at 911. "Because the salary–basis test is a creature of the Secretary's own regulations, his [or her] interpretation of it is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.' " *Id.* (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989)). Under that deferential standard, the *Auer* Court gave the force of law to the Secretary's interpretation of when an employee's compensation is "subject to reduction." *Id.* —— U.S at ——, 117 S.Ct. at 911. The Court also deferred to the Secretary's interpretation in holding that the window of correction does not require an employer to repay improper deductions immediately. *Id.* at ——, 117 S.Ct. at 912.

Here, there is no reason why this Court should not likewise defer to that portion of the Secretary's interpretation providing that the window of correction is unavail-

able to employers that have engaged in a "pattern" of improper deductions. This interpretation is not plainly erroneous, nor is it inconsistent with the language of the regulation. Rather, it resolves an ambiguity therein. The Secretary's interpretation also easily comports with the FLSA's mandate that exemption from overtime requirements be granted only to employers that demonstrate a "*bona fide* intent" to treat their employees as exempt. 29 U.S.C. § 213(a)(1). This Court finds that the Secretary's interpretation, providing that the window of correction is unavailable to employers that have engaged in a "pattern" of improper deductions, rationally expresses the view that such employers lacked a "*bona fide* intent" to treat their employees as exempt. *See Auer,* —— U.S. at ——, 117 S.Ct. at 909 (where "Congress has not 'directly spoken to the precise question at issue,' we must sustain the Secretary's approach so long as it is 'based on a permissible construction of the statute' ") (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694 (1984)). Accordingly, whether or not defendant in this case will be entitled to avail itself of the window of correction will depend on whether the facts show that defendant engaged in a "pattern" of improper deductions.[12]

**11.** Prior to *Auer,* the Department of Labor had set forth a similar, although somewhat less definitive, interpretation in a December 24, 1991 opinion–letter, stating:

The effect of making impermissible disciplinary deductions from "salaried" employees is discussed in § 541.118(a)(6). Where a one–time disciplinary deduction is made, the exemption will not be considered to have been lost in all workweeks if the employer reimburses the employee for such deduction and agrees to not take any such impermissible deduction in the future. Where disciplinary deductions not permitted by the Regulations occur on a regular and recurring basis (e.g., because of an employer's policy), we would question whether such employees, including all of those in the "class" or "category" of employees affected by such deductions, are actually paid on a salary basis and the exemption may be denied in all workweeks.

*Salary Basis, Wage & Hour Manual* (BNA) 99:5257.

**12.** This Court is aware of only two other cases decided since *Auer* which have addressed the

availability of the window of correction in cases of multiple or recurring improper deductions; both were decided in the Eleventh Circuit. *See Davis v. City of Hollywood,* 120 F.3d 1178 (11th Cir.1997) (holding that defendant entitled to window of correction where discovery showed only six employees had been subject to improper deductions over eleven–year period); *Arrington v. City of Macon,* 973 F.Supp. 1467, 1997 WL 453357, at *7–8 (M.D.Ga. Aug.7, 1997) (allowing employer to use window of correction despite settled policy and occasional improper deductions). The Court notes that neither of these decisions relied upon, or even mentioned, the Secretary's interpretation of the window of correction provision in its Amicus Brief in *Auer.* However, the Eleventh Circuit's decision in *Davis* is not facially inconsistent with the Secretary's interpretation, in that six improper deductions over an eleven-year period could be construed not to constitute a "pattern" of improper deductions. To the extent the decision in *Arrington* conflicts with the Secretary's interpretation of the window of correction, this Court finds it unpersuasive because, as set forth above, the

■ Finally, looking at plaintiffs' Complaint, it is evident that plaintiffs have stated a proper claim for relief. Quite simply, plaintiffs contend they and other restaurant managers worked overtime and were not paid for it. If true, plaintiffs have been deprived a right under 29 U.S.C. § 207(a)(1). Plaintiffs have also sufficiently alleged under the *Auer* standard that defendant violated the "salary basis" test, as reflected by the following paragraphs of the Complaint:

13. Pursuant to this standardized form titled "Agreement to Reimburse Losses," Sbarro has had an actual practice of routinely requiring its General Managers and Co-Managers to pay monies to Sbarro representing cash losses at the restaurants owned and operated by it for at least the last three calendar years.

14. Each General Manager and Co-Manager employed and/or hired by Sbarro within the last three calendar years was actually and as a practical matter subject to having his or her predetermined compensation reduced pursuant to this Agreement to Reimburse Losses.

15. In addition ..., Sbarro requires its General Managers and Co-Managers to pay restaurant, cash and/or casualty losses and/or shortages "out of pocket" to Sbarro as a condition of employment and/or continued employment at Sbarro.

16. Sbarro conditions the continued employment of each of its General Managers and Co-Managers, as well as the nature and extent of discipline imposed upon them by Sbarro, upon the willingness of each such General Manager and Co-Manager to "reimburse" Sbarro for such losses as set forth in the Agreement to Reimburse Losses.

...

18. Throughout their employment with Sbarro, the named representative Plaintiffs were subject to the policies, practices and actions of Sbarro as set forth in Paragraphs 10–16 above, which policies led either to an actual practice of improper deductions and/or created a significant likelihood of such deductions.

Construed in plaintiffs' favor, these allegations state a legally feasible claim under the *Auer* standard, and entitle plaintiffs to proceed with discovery. Whether plaintiffs will ultimately prevail on their claims is not the relevant issue in deciding whether the Complaint should be dismissed. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

The remaining question raised by defendant's motion is whether plaintiffs' alleged *out-of-pocket reimbursements to cover cash shortages* can be considered reductions in their "compensation" for purposes of finding a violation of the salary-basis test. *See* 29 C.F.R. § 541.118(a) (salary-basis test requires that employees be paid "a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed"). Defendant argues that the term "compensation" under the regulation means base pay salary. Accordingly, defendant contends that the salary-basis test does not prohibit employers from charging employees for shortages of cash or goods of which they are custodians, so long as the reimbursement is not made by way of deductions from an employee's base pay. Plaintiffs, on the other hand, argue that out-of-pocket reimbursements to cover losses are, as a practical matter, de facto reductions in their salary. Moreover, plaintiffs contend that by requiring managers to make these out-of-pocket reimbursements as a condition of their continued employment, defendant effectively coerced "kickbacks" from its employees in violation of the FLSA. Accordingly, plaintiff argues that if defendant's interpretation of the salary-basis test were true, then "any employer cunning enough to hand a salaried employee his full paycheck before coercing a 'kickback' from the employee—as opposed to deducting the money from his paycheck in the first instance—can avoid compliance with the salary

---

Supreme Court has directed that deference be given to the Secretary's interpretation. Here, the Court may well conclude following discovery of the evidence that, although a policy existed permitting for improper deductions, a "pattern" of improper deductions did not. But what the Court continues to underscore, is that this is a factual question. Furthermore, the Court clearly rejects defendant's position that the window of correction is available in all circumstances.

basis test, and completely dodge both the Department of Labor's and Congress' intent to the contrary." (Class Plaintiffs' Memorandum in Response to Defendant's Supplemental Memorandum of Law in Opposition to Issuance of Class Notice, at 4–5.)

The FLSA does not define the term "compensation", nor do the Secretary's implementing regulations. Nor did the Supreme Court, in *Auer*, address how broadly to interpret the term "compensation" in § 541.118(a). Most courts that have considered the issue have done so in the context of deciding whether an employee's fringe benefits, such as accrued leave time, constitute "compensation" under the salary–basis test. With few exceptions, courts have answered this question in the negative, finding that employers do not violate the salary–basis test where deductions come from something other than an employee's base pay. *See Graziano v. Society of the New York Hospital*, 1997 WL 639026(S.D.N.Y. October 15, 1997) (on motion for reconsideration, holding that employer's policy of requiring employees to draw on banked "comp" or vacation time for partial day absences did not violate salary–basis test); *Yuen v. U.S. Asia Commercial Development Corp.*, 974 F.Supp. 515, 1997 WL 431891, at *4 (E.D.Va.1997) (deductions from an exempt employee's business expense reimbursement account did not violate the salary–basis test because "compensation" under § 541.118 refers only to the actual renumeration of employees for services rendered, *i.e.* their fixed salary); *Aiken v. County of Hampton*, 977 F.Supp. 390, 1997 WL 580699, at *6 (D.S.C.1997) (holiday and vacation pay are not "compensation" under the salary–basis test because they are fringe benefits, "not a part of the predetermined pay [p]laintiffs receive each workweek"); *Barner v. City of Novato*, 17 F.3d 1256, 1261 (9th Cir. 1994) ("compensation" under § 541.118 means "salary", such that employer's reductions to paid leave time, a fringe benefit, did not upset employee's exempt status); *International Assoc. of Fire Fighters v. City of Alexandria*, 720 F.Supp. 1230, 1232 (E.D.Va. 1989), *aff'd*, 912 F.2d 463 (4th Cir.1990) ("While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not

constitute salary [for purposes of § 541.118].").   Significantly, most of these decisions relied on past Department of Labor's opinion letters stating that deductions from an employee's vacation, holiday and sick pay for partial day absences will not render the employee non–exempt under the FLSA, even when such accrued time is subject to a cash pay–out. *See Graziano*, opinion at 2 (holding that "because the Department's interpretation of the applicability of the salary–basis test to the cash out situation... is not plainly erroneous, the Court is bound to follow it"); *International Assoc. of Fire Fighters*, 720 F.Supp. at 1232 (relying on Department of Labor ruling that an employer may require an employee to substitute paid leave for partial–day absences without losing exemption). *But see Yourman v. Dinkins*, 826 F.Supp. 736 (S.D.N.Y.1993), *aff'd*, 84 F.3d 655 (2d Cir.1996), *vacated and remanded on other grounds* sub nom. *Giuliani v. Yourman*, —— U.S ——, 117 S.Ct. 1078, 137 L.Ed.2d 213 (1997) (holding that deductions from an employee's leave allowance should be construed as "deductions in pay" to the extent any lump sum cash pay–out at the time of separation of employment might be reduced accordingly). *Accord Carpenter v. City & County of Denver*, 82 F.3d 353, 360 n. 6 (10th Cir.1996) ("If, in fact, plaintiffs receive equivalent cash for the days stored, deducting days from that source would surely affect the ultimate salary received."), *vacated and remanded on other grounds*, —— U.S. ——, 117 S.Ct. 1078, 137 L.Ed.2d 213, *opinion on remand*, 115 F.3d 765 (10th Cir. 1997).

The question posed to the Court here is somewhat different. In effect, plaintiffs are arguing that their out–of–pocket reimbursements were kickbacks *of base pay* and therefore should be deemed "compensation." Because this claim raises factual issues as to the nature of the out–of–pocket payments and defendant's intent in requiring them, the Court reserves judgment on this question until there is a clearer factual record as to what defendant's policies and practices were, and under what conditions defendant required employees to make out–of–pocket re-

imbursements or deducted losses directly from salary.

### III. *Plaintiffs' Motion for Expedited Notice*

■ Having decided that plaintiffs' Complaint states a colorable claim for relief, the Court will now turn to plaintiffs' request for court-authorized notice informing potential plaintiffs of their opportunity to "opt–in" to the present lawsuit. This motion derives from § 216(b) of the FLSA, which provides for a representative right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions. 29 U.S.C. § 216(b). Section 216(b) provides, in relevant part:

> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, under the FLSA, potential plaintiffs must "opt in" to a collective action to be bound by the judgment (and to benefit from it). Moreover, only by "opting in" will the statute of limitations on potential plaintiffs' claims be tolled. *See, e.g., Soler v. G & U, Inc.,* 86 F.R.D. 524, 528–29 (S.D.N.Y.1980).[13]

It is in part for this reason—the running statute of limitations—that plaintiffs urge the Court to authorize the sending of notice and "opt-in" consent forms to potential plaintiffs "whose claims continue to 'die daily.'"[14] (Plaintiffs' Reply Brief in Support of Order to Show Cause, at 6.) Plaintiffs also maintain that expedited notice is necessary given defendant's recent mailing of reimbursement checks and correspondence to current and former employees, which plaintiffs contend

may have misinformed potential plaintiffs about their rights to pursue claims against defendant for unpaid overtime compensation and other damages. Finally, plaintiffs contend that policy considerations under the FLSA dictate that notice be given to similarly situated employees who have a right to proceed collectively.

The Court has already rejected defendant's leading argument in opposition to plaintiffs motion—namely, that class notice should be denied because plaintiffs' lawsuit fails to state a colorable claim. *See* Section II, *supra*. However, defendant resists the sending of notice at this time on numerous other grounds. First, defendant argues that, even if plaintiffs possess a colorable claim, class notice should be denied and plaintiffs should be prohibited from maintaining a collective action because both they and their counsel are inadequate class representatives. One basis for plaintiffs' alleged inadequacy, is defendant's claim that Hoffmann and Curtis can not be proper representatives because they did not personally experience pay docking. As to plaintiffs' counsel, defendant levels criticism at counsel's alleged misconduct in this proceeding and alleged inadequate fee arrangements with plaintiffs and potential plaintiffs. Second, defendant argues that approving class notice at this time would be premature because defendant has not yet completed its discovery of whether potential plaintiffs are "similarly situated" to the named plaintiffs and whether the named plaintiffs are proper representatives of the prospective class. Third, defendant argues that any alleged urgency to issuing class notice is illusory and, furthermore, that defendant's mailing of reimbursement checks to current and former employees could not have engendered any misinformation requiring class notice because its correspondence to those employees was totally silent on the instant litigation. Fourth, defendant argues that plaintiffs' notice request should be denied due to plaintiffs' alleged misconduct in

---

**13.** Under the FLSA, an action must be commenced within two years after the cause of action accrues, or within three years after accrual if a willful violation is involved. 29 U.S.C. § 255.

**14.** Plaintiffs' statute of limitations concern has been stayed, however, because at the parties' October 8, 1997 hearing, defendant stipulated to a tolling of the statute of limitations pending the Court's determination of defendant's motion for judgment on the pleadings. (Oct. 8 Tr. at 36.)

failing to cooperate in discovery and in bringing an order to show cause without giving advance notice to defense counsel, in accordance with this Court's rules. Finally, defendant asserts that, in the event the Court approves the sending of notice to potential plaintiffs, the class definition and form of notice proposed by plaintiffs are defective in numerous respects. With the exception of some of defendant's concerns about the notice and class definition, the Court rejects defendant's arguments for the following reasons.

### Discussion

■ It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (1978) (court–authorized notice in an appropriate case "comports with the broad remedial purpose of the [FLSA], ... as well as with the interest of the courts in avoiding multiplicity of suits").[15] The question, therefore, is not whether the Court has the power to authorize the notice, but whether the "appropriate" circumstances exist for the Court to exercise its discretion in this matter.

■ The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are "similarly situated." *See* 29 U.S.C. § 216(b). Neither the FLSA nor its implementing regulations define the term "similarly situated." However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *See Jackson v. New York*

*Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (at the preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme"); *Krueger v. New York Telephone Co.*, 1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early stages, plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist"); *Schwed v. General Electric Co.*, 159 F.R.D. 373, 375–76 (N.D.N.Y.1995) ("plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist"); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y.1988) (requiring "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination") (quoting *Palmer v. Reader's Digest Ass'n*, 42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458 (S.D.N.Y.1986)). The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated." *See, e.g., Jackson*, 163 F.R.D. at 431 ("The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.").

■ Plaintiffs have amply satisfied this burden. They have made substantial allegations, both in their Complaint and supporting affidavits, that Sbarro's restaurant managers were subject to reductions in their compensation as result of a uniform company–wide policy requiring them to reimburse defendant for cash shortages and other losses. Moreover, defendant has admitted not only that it had a such a policy, but also that it required all management employees to sign a form agreement explicitly authorizing wage deduc-

---

**15.** In *Hoffmann–La Roche*, the Supreme Court examined the propriety of court-supervised notice under § 216(b) in the context of a collective action brought pursuant to the Age Discrimination in Employment Act (ADEA). The ADEA expressly incorporates by reference the remedies and enforcement provisions of FLSA § 216(b),

*see* 29 U.S.C. § 626(b). Thus, in *Hoffmann–La Roche*, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases. Moreover, in *Braunstein*, the Second Circuit endorsed court-supervised notice pursuant to § 216(b) specifically in a case alleging FLSA violations.

tions to cover losses, and that some managers in fact had their wages docked under the policy. There is no question, therefore, that plaintiffs have shown a factual nexus between their situation and the situation of other current and former Sbarro's restaurant managers sufficient to determine that they are "similarly situated."

Of course, this finding does not suggest that plaintiffs' claims against defendant are meritorious. But the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of "similarly situated" plaintiffs can exist here. *See Krueger,* 1993 WL 276058, *2. Nor must this Court wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. *See Braunstein,* 600 F.2d at 336 (notice to potential plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); *Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("the experiences of other employees may well be probative of the existence vel non of a discriminatory practice, thereby affecting the merits of the plaintiffs' own claims"); *Schwed,* 159 F.R.D. at 375 ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."), *Cook v. United States,* 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.'") (citation omitted); *Krueger,* 1993 WL 276058 at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

In opposing plaintiffs' motion, defendant appeals for support to a number of cases in which courts denied plaintiff's motions for court–authorized notice. Easily distinguishable from the situation here, however, the courts' denials in those cases were based on the total dearth of factual support for the plaintiffs' allegations of widespread wrongdoing. *See Haynes v. Singer Co., Inc.,* 696 F.2d 884 (11th Cir.1983) (district court did not abuse its discretion in refusing to authorize class notice where plaintiff's counsel offered only unsupported assertions of widespread FLSA violations); *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D.Minn.1991) (motion for court–authorized notice denied where plaintiff's unsupported allegations, standing alone, provided "an insufficient basis for determining whether sending court–authorized notice is appropriate"); *Vreeland v. Ethan Allen, Inc.,* 828 F.Supp. 14 (S.D.N.Y.1993) (court refused to authorize class notice in ADEA case where named plaintiffs presented no evidence of a single plan of discrimination and plaintiffs' individual claims of discrimination were "so disparate and so fact intensive that a class of similarly situated plaintiffs [did] not in fact exist"); *Klegerman v. F.G. Apparel, Inc.,* 1986 WL 2531, *5 (N.D.Ill. Feb.11, 1986) (court denied motion of class notice, without prejudice, where plaintiff failed to identify any other "similarly situated" employees and presented no evidence of widespread discriminatory plan). In contrast, here, not only have plaintiffs made substantial allegations of a uniform, widespread policy, but these allegations are factually supported by defendant's own admissions and the Sbarro Cash Control Policy and Agreement to Reimburse Losses submitted by defendant to this Court.

As to defendant's argument that plaintiffs can not properly represent the class because they were never subject to pay docking, this argument simply misses the point. As discussed *supra,* under *Auer,* plaintiffs need not have each suffered actual deductions to show that they and other managers were "subject to" improper reductions in compensation by virtue of a common policy. Here, based on defendant's admissions alone, there is no question that a common policy existed per-

mitting salary deductions to cover losses. The issue, therefore, is whether defendant's policy resulted in an actual practice or significant likelihood of improper deductions. Plaintiffs are adequate class representatives on this issue.

■ With respect to the alleged inadequacy of plaintiffs' counsel, first of all defendant concedes that its discovery on this subject is incomplete.[16] But even were discovery to reveal that plaintiffs' counsel is inadequate, defendant has not proffered any grounds to suggest that the Court could not, under appropriate circumstances, give plaintiffs in a collective action a reasonable opportunity to find substitute counsel. Furthermore, defendant is incorrect in arguing that the Court must scrutinize plaintiffs' financial assets and fee arrangements with counsel before it can certify the class. While this type of judicial scrutiny may be required for Rule 23 class actions, it is not required for collective actions under the FLSA. Section 216(b), which provides for collective actions under the FLSA, is silent on the issue of adequacy of representation, nor does it direct courts to follow the dictates of Rule 23 in certifying a class. Consequently, the prevailing view among federal courts, including courts in this Circuit, is that § 216(b) collective actions are *not* subject to Rule 23's strict requirements, particularly at the notice stage. *See Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("imposing the demanding requirements of Rule 23 on plaintiffs in the context of notice authorization would frustrate plaintiffs' efforts to proceed collectively and preclude the benefits noted by the Supreme Court [in *Hoffmann–La Roche, Inc. v. Sperling* ]"); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y.1988) ("Section 216(b) displaces the class ac-

tion devices of Fed.R.Civ.P. 23"), *Abrams v. General Elec. Co.*, 1996 WL 663889, at *1 n. 3 (N.D.N.Y.1996) ("the doctrine followed by the district courts of the Second Circuit" is that Rule 23 requirements do not apply to § 216(b) FLSA actions). *Accord Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F.Supp. 418, 421 (M.D.Ala.1991) ("Rule 23 class action and a § 216(b) collective action are 'irreconcilable' ") (citation omitted); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 265 (D.Minn.1991) ("[FLSA] class actions are not governed by Federal Rule of Civil Procedure 23."); *D'Anna v. M/A–COM, Inc.*, 903 F.Supp. 889, 892 n. 2 (D.Md.1995) (FLSA collective actions are "not subject to the requirements of a class action set forth in Fed.R.Civ.P. 23"); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 358 (D.N.J.1987) ("[t]he requirements for pursuing a Section 216(b) class action are independent of and unrelated to the requirements of a class action filed pursuant to Rule 23").[17]

■ The Court is not deciding that the adequacy of plaintiffs' counsel in this action is entirely irrelevant. FLSA collective actions are still representative actions and, given that individuals who "opt in" to this proceeding will most likely be represented by the named-plaintiffs' counsel, the Court has an equitable interest in ensuring that they are adequately represented. However, in light of the FLSA's silence on this issue, the consistent view in this Circuit and elsewhere that Rule 23 requirements do not apply to FLSA actions, and the FLSA's broad remedial intent favoring early notice to potential plaintiffs, the Court will not delay authorizing notice pending defendant's completion of discovery on adequacy of representation issues. The defendant may re–raise any per-

16. Defendant has also requested that the Court postpone any finding on the adequacy of plaintiff's counsel until after the Magistrate Judge has decided a pending motion by defendant to sanction plaintiffs' counsel.

17. One rationale for distinguishing between Rule 23 class actions and FLSA collective actions is that Rule 23's requirements are designed to protect the due process rights of absent class members, whereas in an FLSA "opt-in" action, these requirements need not be strictly observed because there are no absent class members for the

court to protect. *See Frank v. Capital Cities Communications, Inc.*, 1983 WL 643 (S.D.N.Y. 1983), at *2 n. 1. *But see Shushan v. University of Colorado*, 132 F.R.D. 263 (D.Colo.1990) (holding Rule 23 requirements as to numerosity, typicality, adequacy of representation, etc., apply to § 216(b) collective actions). *Shushan's* holding has been specifically rejected by at least two district courts in this Circuit. *See Jackson*, 163 F.R.D. at 431; *Abrams*, 1996 WL 663889 at *1 n. 3 (finding *Shushan* at odds with Second Circuit precedent and "unpersuasive").

sisting objections it has to plaintiffs' counsel's adequacy following discovery.

Finally, defendant argues that plaintiffs' motion for expedited notice should be denied because plaintiffs have failed to show urgency, failed to follow the Court's rules in presenting their motion as an order to show cause, and failed to cooperate in discovery. The Court is unpersuaded by these arguments. The Court notes that counsel to both sides have been criticizing each other's conduct from the outset of this proceeding. The Court will not allow this constant back–and–forth of complaints to delay the sending of class notice, particularly where it is evident that a group of "similarly situated" potential plaintiffs exist. Furthermore, although plaintiffs' motion was presented as an order to show cause, the Court has given both sides ample opportunity to submit briefs and other materials on the motion, and has allowed oral argument on several occasions.

### A. Class Definition and the Proposed Notice

Having concluded that court–authorized notice is appropriate, the Court must now decide upon the appropriate class definition. Plaintiffs ask the Court to define the class to include "Present and Former General and/or Restaurant Managers and/or Co–Managers of Sbarro, Inc. (or persons holding equivalent positions, however titled) Who Were Employed at Sbarro Within the Past Three (3) Years." Defendant, on the other hand, argues that the class should be defined as employees who (a) were employed by Sbarro as General Manager or Co–Manager within the past three years, *and* (b) were classified as salaried exempt employees, *and* (c) worked overtime, *and* (d) had money withheld from their bi–monthly paychecks to reimburse Sbarro for cash and inventory shortages.

The Court rejects defendant's proposed requirement in subsection (d) because, as discussed *supra*, potential plaintiffs need not show they suffered actual deductions in order to claim they were "subject to" improper deductions. However, the Court agrees with defendant that, as prerequisites to joining

this action, plaintiffs must have been classified by defendant as exempt employees and they must have worked overtime. These prerequisites are appropriate because the relief plaintiffs seek is past overtime pay denied to them on the basis of a claimed exemption. No persons will be entitled to damages in this action unless, during the relevant period, they worked overtime and were classified as exempt. With these modifications, the Court accepts plaintiff's class definition and approves the class notice in the form attached to this opinion.*

**SO ORDERED.**

---

\* Editor's Note: The class notice is deleted for publication purposes.